MARY ESSICK, Administratrix of HARVEY ESSICK, Plaintiff, v. CITY OF LEXINGTON and LEXINGTON UTILITY COMMISSION, Defendants, and DIXIE FURNITURE COMPANY, H. T. LINK and A. F. TAYLOR, Additional Defendants.

(Filed 9 June, 1950.)

**1. Master and Servant § 37—**

The Workmen's Compensation Act is a radical and systematic change in the common law, and the Act must be liberally construed to accomplish its purposes, its provisions being superior to the common law in all respects where it deals with the liabilities arising out of the relationship of employer and employee.

**2. Electricity § 10—**

The complaint alleged that intestate was engaged in laying metal roofing on a catwalk across a street, and was killed when a piece of roofing he was handling in the performance of the work struck a high tension wire, which was without insulation at many places and which was only some four feet above the roof of the catwalk. *Held:* Contributory negligence does not appear on the face of the complaint as a matter of law.

**3. Master and Servant § 41—**

Superiors of the injured employee are within the immunity of G.S. 97-9 when their orders, upon which alleged liability is predicated, are given in the conduct of the employer's business, and such supervisory employees are improperly made additional parties defendant upon the motion of the original defendant in an action by the personal representative of a deceased employee against the third person tort-feasor.

**4. Same—**

While in an action by the employer or the insurance carrier against the third person tort-feasor, such defendant may plead the negligence of the employer in bar of recovery by subrogation, where the personal representative of the deceased employee alone sues the third person tort-feasor, such defendant is not entitled to joinder of the employer as an additional party defendant upon allegations that the employer was guilty of concurring negligence constituting the primary cause of the injury.

PLAINTIFF's and additional defendants' appeal from *Sink, J.,* April 17 and 18, 1950, Davidson Superior Court.

The plaintiff's intestate was killed by contact with a live wire while he was an employee of the Dixie Furniture Company, later involved in this

proceeding. His widow, present administratrix, filed a claim for compensation with the Industrial Commission, and it was there found that his death was caused by an accident arising out of and in the course of his employment with this company. Under the schedule provided in the Workmen's Compensation Act the Industrial Commission awarded to her and dependents $6,000 as compensation, together with other items specified in the statute; of which the insurance carrier has paid the $6,000 and will in due time pay the minor items awarded.

The insurance carrier filed an affidavit setting forth its interest in the proceeding and the amount paid under the Industrial Commission's award, which under the statute is excluded from jury evidence. G.S. 97-10.

It is unnecessary to reproduce in full, or even in summary, the voluminous charges and countercharges in the pleadings. We confine this statement to matters critically bearing on the orders, motions, and demurrers which were subjects of controversy in the lower court and of the present appeal.

After necessary formal statements which are omitted, the plaintiff complains: That the defendant City of Lexington as a municipal corporation, maintains streets and sidewalks within the limits of the city and is the owner of electric light and power lines which furnish electricity and power to the citizens of the city and to corporations and persons doing business therein and charges for the electricity so furnished; that it was at the time of intestate's injury engaged in the business of selling electric current to various purchasers throughout the city at a profit; that it had authority, control and supervision of the upkeep of the streets and sidewalks within the city and of its electric light and power lines within the said limits; and that particularly it had authority, control and supervision of East Fourth Avenue, South Salisbury Street in said city and that it maintained, controlled and had authority and supervision over electric light and power lines and the poles to which said lines are attached.

Of the Lexington Utility Commission it is complained that the same was created by an Act of the Legislature, Session of 1935, Chapter 22, Public-Local and Private Laws of North Carolina, and was given full charge and control and general supervision and management of the electric light plant and other utilities of the City of Lexington with the power to collect all rents and profits accruing therefrom and making all disbursements on account of same and with full charge and control of the construction, repairing and alteration or enlargement of the electric light plant, the waterworks plant and the sewerage plant and the full power and authority to make all necessary contracts relating to the same, including the purchase of all necessary sites, machinery, supplies and

other property and the employment of the necessary labor and help in said construction, repairs, alteration, and enlargement; with other powers and duties set out in the foregoing laws of 1935 which are made a part of the complaint; that the said defendant was at all times referred to in the complaint, and is now an agency of the City of Lexington and that the employees or servants and agents of the defendant Lexington Utility Commission are in fact the employees and agents and servants of the defendant City of Lexington; and that the servants, agents and employees of the Lexington Utility Commission were on the 2nd day of December 1949, the date of intestate's injury, acting as employees of the City of Lexington and were under the direction of the City of Lexington and its agency, the Lexington Utility Commission.

That the defendant City of Lexington and the defendant Lexington Utility Commission had been for many years engaged in the business of furnishing and selling for profit electric current throughout the City of Lexington and other areas of Davidson County and were acquainted with the dangers of electricity and of high voltage electric wires and that they knew from years of handling said electric current that wires were dangerous and unsafe unless properly insulated and kept at a proper distance from the ground or from buildings adjacent to the said electric wires.

Coming to the circumstances of the injury, the complaint further sets out that on or about 30 May 1949, the Dixie Furniture Company, a corporation located particularly on South Salisbury Street and East Fourth Avenue in the City of Lexington, applied to the authorities of the City of Lexington for permission to erect a tramway running across South Salisbury Street from the southeast side to the northwest side of South Salisbury Street and running thence across East Fourth Avenue from the northeastern side thereof to the southwestern side thereof in order that the said company might move its manufactured furniture backwards and forwards from its buildings already erected to a new building which it was erecting or had erected on the south side of East Fourth Avenue and on the west side of South Salisbury Street.

It alleged further that after the furniture company applied for permission to build the said tramway or catwalk across these streets to its new building lately erected, the City of Lexington, through its servants, agents and employees, granted the said permission to build the tramway to the said new building; and in order to enable the furniture company to build the tramway or catwalk the defendants through their servants, agents and employees moved a number of electric lines which theretofore had been fastened to a pole along the south curb of East Fourth Avenue and placed them upon poles on the north side of East Fourth Avenue, and raised the said wires in order to clear the contemplated catwalk or tramway to be built by the furniture company; that they raised together the

low voltage wires a short distance above the top of the roof of the con-templated catwalk and along with them raised several high voltage wires approximately four feet above the top of the roof of the catwalk; and that at the time the said defendant moved the said low voltage wires and high voltage wires from the south side to the north side of the street, the said wires were uninsulated at many places and were in an unsafe or dangerous condition to the knowledge of the said defendants. And that the city knew or should have known that the said wires were uninsulated and that there were large parts of the insulation broken off from both the low voltage and high voltage wires and that the said defendants failed to replace the said uninsulated wire with the wires having proper insula-tion but that they strung the said low voltage and high voltage wires above the point where the top of the proposed catwalk or tramway was to reach, knowing at the time that the said wires were dangerous and unsafe with reference to any persons who might be engaged in building the said tramway or catwalk or to any persons who might from time to time be upon or in the said tramway or catwalk.

It is further alleged that on 2 September 1949 the plaintiff's intestate, at the time employed as a carpenter by the Dixie Furniture Company, Inc., was engaged in completing the task of putting the roof on the cat-walk or tramway above described, and that he and other persons working with him had completed the job of nailing on or affixing the galvanized tin roof and were engaged in the act of covering the center of the said roof with galvanized capping which was being put on in sections ten feet in length; that the plaintiff's intestate was on top of the roof of the catwalk nailing down the capping while a fellow worker named David T. Smith was handing up the sections of capping through the uncovered portion of the center of the roof to the plaintiff's intestate, and that he handed up one section of said capping to plaintiff's intestate, and as the plaintiff's intestate pulled the said section through the uncovered portion of the roof, the said capping came in contact with an uninsulated portion of one of the high tension wires of the defendant, resulting in his electro-cution and immediate death; and that the death of the plaintiff's intestate was proximately caused by the carelessness and negligence of the defend-ants through their servants, agents and employees.

The specific acts of negligence are set up in the complaint including:

(a) That they carelessly and negligently placed the uninsulated wires bearing electric current on their poles in their new position when they knew their uninsulated and dangerous condition and allowed the same to remain so strung, when they knew and had been advised on various occa-sions that the tramway was to be erected under the said wires and across East Fourth Avenue and that men would be engaged in the building of said tramway and in the covering of same.

(b) That they carelessly and negligently failed to notify the Dixie Furniture Company, its agents, servants and employees, and especially the plaintiff's intestate that they had strung high tension wires across to the place where the proposed catwalk was to be built and that the said high tension wires were uninsulated and that the covering on said wires had come off and that the dangerous wires were exposed and were likely to come in contact with any object or any person that might be engaged in the erection of the said catwalk.

(c) That the defendants carelessly and negligently failed to notify the plaintiff's intestate and others engaged in the construction of said catwalk that at least two or three of the said wires above the said catwalk were of an extremely high voltage, namely 2300 volts, and that they were extremely unsafe and that any contact with the said high voltage wires would cause immediate death.

(d) That they carelessly and negligently allowed the said high voltage wires and the low voltage wires to remain uninsulated after they were moved from the south side of East Fourth Avenue to the north side thereof and for a period of several months without replacing said wires with new and insulated wires.

(e) That they carelessly and negligently failed and refused to cut off the current from the said wires at a time when they knew that work was progressing thereunder and in that they carelessly and negligently allowed the plaintiff's intestate and others to work immediately under and between them without warning them as to the difference in voltage carried on the said wires and without warning them about the uninsulated portions hereinabove referred to.

(f) That they carelessly and negligently failed and refused to raise the said high tension wires to a safe distance above the top of the catwalk so as not to come in contact with any portion of materials being used in the building or roofing of the same.

(g) That they carelessly and negligently failed and refused to use proper care in the construction and maintenance and operation of their electric wires at the places above referred to when they knew or should have known that persons were likely to come in contact with the said wires while the said catwalk was being constructed and thereafter.

(h) That the defendants carelessly and negligently violated the provisions and regulations and rules laid down by the State of North Carolina with reference to the manner in which wires charged with electric current shall be strung on poles along highways and streets and adjacent to the buildings on said streets and highways.

The complaint alleges further that due notice had been given to the City of Lexington of the claim and demand of the plaintiff in the sum of $100,000, complying with Section 34, Chapter 5, of the Public-Local and

Private Laws of North Carolina, Session 1941, and that said claim and demand has not been paid and the 30 days had elapsed since the same was presented; and that the plaintiff's intestate died on the 2nd day of September, 1949, and that this action was instituted on the 11th day of February, 1950, within a year after the death of the said intestate.

Other allegations of the complaint relate to the health, skill and carning capacity of the intestate and to the matter of damages.

The City of Lexington filed a demurrer to the complaint as not stating a cause of action with respect to the defendant City of Lexington, (first as to negligence of this defendant); (a) because it appears from the complaint that the defendant Lexington Utility Commission was in full charge and control of the electric light plant and the construction, repair, alteration or enlargement of the plant; and that the City of Lexington had nothing to do therewith; and that (b) and (c) the complaint does not allege any duty on the part of this defendant or violation of any duty.

Second, (as to contributory negligence of Essick). With respect to the contributory negligence of plaintiff's intestate, that said contributory negligence affirmatively appears on the face of the complaint in that he placed himself in a position of danger which was open and obvious to any person of ordinary prudence and carelessly and negligently handled metal roofing in close proximity to a power line in such manner as to contact the power line while standing on a tin roof.

On 3 April 1950, the Lexington Utility Commission moved to have Dixie Furniture Company, H. T. Link and A. F. Taylor made parties defendant and the Clerk of the Superior Court made an order making said parties. To this order the plaintiff and the additional defendants so made objected and excepted and gave notice of appeal to the Superior Court.

The defendant Lexington Utility Commission answered, admitting more formal allegations of the complaint and contraverting others, and denying its negligence. It pleads contributory negligence on the part of Essick. This defendant in a second further answer, defense and cross-action (in paragraphs 16 to 26) sought to charge the Dixie Furniture Company, H. T. Link and A. F. Taylor with negligence in bringing about the injury and death of Essick, concluding that if this defendant was guilty of any negligence "the co-defendants Dixie Furniture Company, H. T. Link and A. F. Taylor were guilty of primary negligence toward the plaintiff's intestate, which primary negligence was the direct, intentional, positive, active and actual cause of said accident and of the death of the plaintiff's intestate, and in the event this defendant should be held negligent and liable to the plaintiff, then this defendant is entitled to a judgment over against said co-defendant Dixie Furniture Company, H. T. Link and A. F. Taylor to the end that this defendant, a municipal

corporation engaged in operating a public utility, should be exonerated and saved harmless by said co-defendants."

Thereafter, and before the time for filing reply or answer of Lexington Utility Commission, the plaintiff and the additional defendants, Dixie Furniture Company, H. T. Link and A. F. Taylor, to wit, on April 3, 1950, filed a motion to strike from the complaint of the Utility Commission paragraphs 16 to 26, inclusive, containing all of the second further answer and defense, and with specified prayers for relief relating thereto. Upon notice to parties and after agreement as to the time and place for the hearing, the appeal from the Clerk of the Court relating to the making of additional parties Dixie Furniture Company, H. T. Link and A. F. Taylor, and objection and exception thereto by the plaintiff and said additional parties, the motion of said plaintiff and additional parties to strike from the record the foregoing specified allegations and the demurrer of the City of Lexington to the complaint, were all heard before Judge Hoyle Sink and judgment rendered therein on 18 April, 1950.

In his judgment Judge Sink allowed the motion of the plaintiff to strike the second further defense from the answer of the Utility Commission and sustained the demurrer of the City of Lexington upon the ground that the complaint establishes upon its face the contributory negligence of plaintiff's intestate.

To the ruling of the court sustaining the above portion of the demurrer plaintiff objected and excepted.

The court thereupon affirmed the order of the Clerk of the Superior Court making Dixie Furniture Company, H. T. Link and A. F. Taylor parties to the action, and to this ruling of the court affirming said order the plaintiff and additional defendants Dixie Furniture Company, H. T. Link and A. F. Taylor objected and excepted.

The court thereupon allowed the motion of plaintiff to strike from the answer all of paragraphs 16 to 26, inclusive, containing the second answer and defense and cross-action of the Lexington Utility Commission and pertinent prayers for relief and all reference in the answer referring to the said Dixie Furniture Company, H. T. Link and A. F. Taylor as defendants or co-defendants, and that the words "defendants" or "co-defendants" be stricken out. The defendant Lexington Utility Commission was allowed 20 days to file additional pleadings.

To the ruling of the court sustaining paragraph 2 of the demurrer of the defendant City of Lexington, the plaintiff in apt time objected, excepted thereto and to the signing of the order; and gave notice of appeal; to the ruling of the court sustaining the order of M. P. Cooper, Clerk of the Superior Court, dated 3 April 1950, making Dixie Furniture Company, H. T. Link and A. F. Taylor additional parties defendant to

the action, the plaintiff and the additional parties defendant, Dixie Furniture Company, H. T. Link and A. F. Taylor each objected and excepted; objected and excepted to the signing of the judgment, and appealed.

The assignments of error are as follows:

"1. The plaintiff assigns as error that the Court erred in holding as a matter of law that the plaintiff's intestate was guilty of contributory negligence upon the allegations set forth in the complaint.

"2. The plaintiff and additional defendants, Dixie Furniture Company, H. T. Link and A. F. Taylor assign as error the action of the Court in affirming the Order of M. P. Cooper, Clerk Superior Court, Davidson County, dated April 3, 1950, making Dixie Furniture Company, H. T. Link and A. F. Taylor additional parties defendant to this action."

On the hearing of the appeal in this Court the Utility Commission demurred *ore tenus* to the complaint as not stating a cause of action on the ground that it affirmatively appears on the face thereof that plaintiff's intestate was contributorily negligent in bringing about his injury and death.

The Dixie Furniture Company, H. T. Link and A. F. Taylor, referred to as "additional defendants," demurred *ore tenus* to the "cross-action" of the Lexington Utility Commission against them on the ground that it appears on the face of the record that compensation has already been paid plaintiff in full under the Workmen's Compensation Act, by which all parties are bound, and the Superior Court had no jurisdiction to entertain it.

*S. A. DeLapp and Don A. Walser for plaintiff, appellant.*

*S. A. DeLapp, Don A. Walser, and Smith, Wharton, Sapp & Moore for Dixie Furniture Company, H. T. Link and A. F. Taylor, additional defendants, appellants.*

*Jones & Small and P. V. Critcher for City of Lexington and Lexington Utility Commission, defendants, appellees.*

SEAWELL, J.   On this appeal we have to deal with a variety of unusual claims set up by the appellees and controverted by the appellants, and quite a number of novel concepts of applicable law relating to the defenses available in the instant case.   The legal controversy arises in part over the apparent inability to reconcile provisions of the Workmen's Compensation Act with the common law, which it very substantially amends, and

in many particulars, indeed those most essential to the effectiveness of the act, it abrogates.

We may observe initially that the very life of the Workmen's Compensation Act lies in its invasive and innovating substitution of statute law in a field theretofore left entirely to the common law,—in the retreat from the outmoded methods of the common law to a more modern concept of economy in industry and to related law;—from uncertainty and war and waste to security and peace and productivity in industry and labor. Where radical and systematic changes have been made in setting up a system of such wide scope as we find in the Workmen's Compensation Act, and one so markedly remedial in its nature, the break with the past must necessarily be viewed with liberality in order to accomplish its purposes; and its provisions, liberally construed, given that effectiveness which alone will protect the act from erosion and regression.

The Workmen's Compensation Act is not a mere island in the sea of common law. The statutes creating it, amended from time to time, are superior to the common law in those respects in which they can and do, amend or abrogate it. There is no presumption of superiority in the common law where they seem to clash.

In order that the *rationale* of this decision may be clear, we take up the various motions, orders and judgments of the court in the order presented in the record.

On the final hearing the judge allowed the plaintiff's motion to strike out all of the second further answer and cross-action of the answer of the Utility Commission, including paragraphs 16-26, and from this there was no appeal; it is not before us.

The City of Lexington demurred to the complaint as not stating a cause of action (a) on the ground that it showed no negligence of defendant, and (b) that it appears on the face of the complaint that plaintiff's intestate was contributorily negligent in bringing about his injury and death. And on the hearing in this Court the Utility Commission demurred to the complaint, *ore tenus,* on similar grounds.

As appears in the statement the Dixie Furniture Company, employer, and H. T. Link and A. F. Taylor, employees, respectively the treasurer and the superintendent of the plant, all referred to as "additional parties," were made parties by order of the clerk of the court, from which order the said additional parties appealed.

On the hearing of the appeal here the "additional parties" above named, demurred *ore tenus* "to the cross-action against them" on the grounds stated above.

1. On the hearing in the Superior Court the judge declined to allow the demurrer to the complaint based on the ground it did not allege negligence on the part of defendant; but sustained the demurrer and

motions to dismiss on the ground that it appeared conclusively on the face of the complaint that plaintiff's intestate was contributorily negligent in bringing about his injury. On this demurrer that question alone is before us; and on examination of the allegations of the complaint we are of the opinion that the demurrer in that respect should not have been sustained, and the order to the contrary is reversed.

As the case is yet for trial before the jury, we make no extended discussion of the point, simply saying that contributory negligence of the plaintiff's intestate does not appear on the face of the complaint as a matter of law.

2. The question of additional parties may be considered in connection with the *ore tenus* demurrer of the "additional defendants" to any cross-action against them set out in the answer.

There are three of the additional parties—the employer, Dixie Furniture Company, and the employees Link and Taylor. If these employees, Link and Taylor, are under the protection of the act in the same manner that their employer is protected by it, it is manifest that they have no business in this action as parties. And the same result will follow if they have no rights to be dealt with in the cross-action.

The appellees point out that since it has been held by this Court that an employee may maintain a common law action against a fellow employee for negligent injury, although both are within the "coverage" of the Workmen's Compensation Act, *ergo* the common law should be available to a third person in an action brought against him for negligence, in which he may plead, *contra,* the negligence of the employer in an action under the statute, G.S. 97-10, to the extent of the subrogation therein sought. Avoiding for the nonce the *non sequitur* in that reasoning, (to which we later refer), we discuss the two cases which the defendants cite as supporting their position: *Tscheiller v. Weaving Company,* 214 N.C. 449, 199 S.E. 623, and *McCune v. Manufacturing Co.,* 217 N.C. 351, 8 S.E. 2d 219.

These cases bring up the construction of G.S. 97-9 of the Workmen's Compensation Act which has not hitherto been reviewed by this Court. This section of the act brings within the same immunity afforded the employer "those conducting his business." If the defendants Link and Taylor come within that definition they have obviously no place as parties defendant in this action. In neither of cited cases was G.S. 97-9 brought to the attention of the Court or mentioned in the opinions. We think this fact is significant in our present and first construction of the statute.

In *Tscheiller v. Weaving Co.,* the plaintiff was employed by the defendant company along with several hundred other persons. She brought the action against the Weaving Company and an individual, Banks McArver, a fellow employee, who was engaged in selling for the company

sandwiches, food and drinks, exclusively to the employees of the mill. McArver was in full charge of that activity. She brought the suit to recover for injuries following the consumption of toxic food sold by McArver, acting for the company. The presumption of the adoption of the Workmen's Compensation Act by all the parties prevailed and the suit was dismissed as to the Mill Company. It was retained as to McArver, (as a common law action), who was held not to be within the protection of the Act.

McArver was clearly conducting his employer's business in that particular instance by any definition we may give that term; and we do not understand that the statute means that the persons protected by the Act in the same manner as the employee must take part in the conduct of all the employer's business activities. Ordinarily there is no individual in a corporation so omnipotent; nor is there anyone but the master whose influence is so all-pervasive. We have no space to call attention to the contradictions and fantastic situations that must arise under the application of G.S. 97-10 unless 97-9 is given its weight in an *in pari materia* interpretation of both sections, and the immunity given in Section 97-9 to "those conducting the business" be given a liberal construction and its definitions and intendments carried through the provisions of 97-10.

Otherwise, for example, the injured employee may sue his fellow employee under the common law, but not his employer; and yet standing in the shoes of the original employee as subrogee, the employer may sue its other employee and recover out of him in complete subrogation for all it has had to pay as an award without the slightest recognition of any coverage of the act or immunity granted by Sec. 97-9.

In the *McCune case* the employee was subjected to a vicious assault by the foreman in effecting his discharge and ejectment from the premises. Here again there is no question the foreman was the superior of McCune on whom the assault was made; and if considered as negligence should be immune from a common law suit under the definition in G.S. 97-9. However, this case might well have been decided on the principle that a vicious assault by a fellow workman acting as *alter ego* of the employer was not within the contemplation of the Act and it conferred no immunity. We quote from Horovitz, "Injury and Death under Workmen's Compensation Laws," p. 336:

> "Where the *employer* is guilty of a felonious or *wilful* assault on an employee he cannot relegate him to the compensation act for recovery. It would be against sound reason to allow the employer deliberately to batter his helper, and then compel the worker to accept moderate workmen's compensation benefits, either from his insurance carrier or from himself as self-insurer. The weight of

authority gives the employee the choice of suing the employer at common law or accepting compensation."

See cited cases.

At any rate, for the reasons stated, these cases are not controlling here.

Link, as treasurer, and Taylor, as superintendent of the plant, were clearly within the pale of 97-9, as those who conduct the business and entitled to the immunity it gives.

The defendants, however, have admitted that they have no right, under G.S. 1-240, or other law, to bring the "additional defendants" in for the purpose of contribution as joint tort-feasors. *Brown v. R. R.,* 202 N.C. 256, 162 S.E. 613.

Furthermore, neither Link nor Taylor is a necessary or proper party to any cross-action or defense against the employer in respect to its demand for reimbursement by reason of subrogation arising from the fact that it has paid an award. They have paid no award and have no interest in the subject, no right of being dealt with for complete determination of the controversy. The motion by these "additional defendants" to be dismissed as parties to the action should have been allowed.

The making of the employer, Dixie Furniture Company, a party defendant, and retaining it as such brings up a more serious question.

Under *Brown v. R. R.,* 204 N.C. 668, 169 S.E. 419, when an award has been made and the employer has paid it, or is bound to do so, an action at common law may be brought by the employer, or the injured employee, or in case of death, by the personal representative of the deceased employee, in the manner set out in the statute, G.S. 97-10, in which the employer may, on the principle of subrogation, become reimbursed *pro tanto* for the award so paid. And as against this right, the party thus sued may plead in bar of recovery by subrogation the negligence of the employer in producing the injury.

As the pleadings now stand we are of the opinion that the making of Dixie Furniture Company in the case a party defendant is not justified.

It follows that the judgment of the court below dismissing plaintiff's action on the ground of contributory negligence of the intestate Essick and retaining the "additional defendants" as parties defendant in the action is in error and must be reversed. It is so ordered.

The cause is remanded to the Superior Court of Davidson County for such further proceedings as may be proper.

Reversed and remanded.