NORTH CAROLINA INSURANCE GUARANTY ASSOCIATION v. THE BOARD OF TRUSTEES OF GUILFORD TECHNICAL COMMUNITY COLLEGE

No. 470PA07

(Filed 15 April 2010)

**Immunity— sovereign—waiver—workers' compensation insurance—insurance guaranty association**

The doctrine of sovereign immunity did not bar the North Carolina Insurance Guaranty Association (NCIGA) from being reimbursed by Guilford Technical Community College (GTCC) pursuant to N.C.G.S. § 58-48-50(a1)(1) for payments NCIGA made on workers' compensation claims filed by GTCC employees after GTCC's workers' compensation insurance carrier became insolvent and was liquidated. The legislature has waived sovereign immunity through the Workers' Compensation Act for claims by

N.C. INS. GUAR. ASS'N v. BOARD OF TR. OF GUILFORD TECHNICAL CMTY. COLL.

[364 N.C. 102 (2010)]

governmental employees, and this waiver applies to the provisions of the Insurance Guarantee Association Act involving workers' compensation insurance to effectuate the primary purpose of the Workers' Compensation Act, which is to provide workers secure, timely compensation. N.C.G.S. 97-7.

Justice EDMUNDS dissenting.

Chief Justice PARKER and Justice TIMMONS-GOODSON join in this dissenting opinion.

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, 185 N.C. App. 518, 648 S.E.2d 859 (2007), reversing an order denying defendant's motion to dismiss entered on 27 January 2006 by Judge A. Leon Stanback, Jr. in Superior Court, Wake County. Heard in the Supreme Court 30 March 2009.

*Nelson Mullins Riley & Scarborough LLP, by Christopher J. Blake and Leslie Lane Mize, for plaintiff-appellant.*

*Smith Moore Leatherwood LLP, by Sidney S. Eagles, Jr. and Matthew N. Leerberg, for defendant-appellee.*

*Roy Cooper, Attorney General, by Christopher G. Browning, Jr., Solicitor General; John F. Maddrey, Assistant solicitor General; and Gary R. Govert, Special Deputy Attorney General, for State of North Carolina, amicus curiae.*

*North Carolina League of Municipalities, by Andrew L. Romanet, Jr., General Counsel, and Gregory F. Schwitzgebel, III, Senior Assistant General Counsel; and North Carolina Association of County Commissioners, by James B. Blackburn, III, General Counsel, amici curiae.*

HUDSON, Justice.

Here we address whether sovereign immunity bars the North Carolina Insurance Guaranty Association ("NCIGA") from being reimbursed by Guilford Technical Community College ("GTCC") through its Board of Trustees, pursuant to N.C.G.S. § 58-48-50(a1)(1) (2001)[1] of the Insurance Guaranty Association Act (the "Guaranty

---

1. Effective 10 June 2003, N.C.G.S. § 58-48-50(a1) was amended. Act of June 5, 2003,. ch. 167, sec. 2, 2003 N.C. Sess. Laws 227, 229. The amendment "applies to claims associated with insurers that become insolvent on or after that date." *Id.*, sec.

N.C. INS. GUAR. ASS'N v. BOARD OF TR. OF GUILFORD TECHNICAL CMTY. COLL.

[364 N.C. 102 (2010)]

Act"), N.C.G.S. chapter 58, article 48. Plaintiff NCIGA seeks reimbursement for payments NCIGA made on workers' compensation claims filed by GTCC's employees after GTCC's workers' compensation insurance carrier became insolvent and was liquidated. The Court of Appeals determined that there was no "clear proof that the State ha[d] waived [its] sovereign immunity pursuant to the reimbursement provision of the Guaranty Act" and held that GTCC's motion to dismiss should have been allowed based on sovereign immunity grounds. *N.C. Ins. Guar. Ass'n v. Bd. of Trs.*, 185 N.C. App. 518, 523, 648 S.E.2d 859, 862 (2007). Because we conclude that N.C.G.S. § 97-7 of the Workers' Compensation Act is a plain and unmistakable waiver of sovereign immunity for the underlying claims involved here, which renders an additional waiver of sovereign immunity in the Guaranty Act itself unnecessary, we reverse.

## I. Background

NCIGA is a "nonprofit, unincorporated legal entity" created and governed by the Guaranty Act. N.C.G.S. § 58-48-25 (2007). "All insurers defined as member insurers in G.S. 58-48-20(6)" are required to be "members of the [NCIGA] as a condition of their authority to transact insurance in this State." *Id.* " 'Member insurer' means any person who (i) writes any kind of insurance to which th[e Guaranty Act] applies . . . and (ii) is licensed and authorized to transact insurance in this State." N.C.G.S. § 58-48-20(6) (2007). Under the Guaranty Act, when an insurer becomes insolvent and is liquidated by the insurance regulator of this or another state, NCIGA becomes "obligated" to pay for "covered claims" on behalf of the insolvent insurer in accordance section 58-48-35. "For purposes of administration and assessment," NCIGA is "divided into three separate accounts: (i) the automobile insurance account; (ii) the workers' compensation account; and (iii) the account for all other insurance to which the [Guaranty Act] applies." *Id.* § 58-48-25. Only the workers' compensation account is at issue here.

GTCC is a two-year accredited community college operating under N.C.G.S. chapter 115D. At some time before 31 December 2000, GTCC purchased a workers' compensation insurance policy from Reliance Insurance Company ("Reliance"). Reliance was domiciled in Pennsylvania and on 3 October 2001, was declared insolvent and placed into liquidation by the Pennsylvania insurance commissioner.

5, at 230. Because this case involves claims associated with an insurer insolvency that occurred before 10 June 2003, the pre-amended version of the statute is the version we review here.

N.C. INS. GUAR. ASS'N v. BOARD OF TR. OF GUILFORD TECHNICAL CMTY. COLL.

[364 N.C. 102 (2010)]

Thereafter, under the Guaranty Act, NCIGA allegedly began to make payments on workers' compensation claims against GTCC. Before making these payments, NCIGA did not dispute that these were " '[c]overed claim[s]'" as defined by N.C.G.S. § 58-48-20(4),[2] which provides:

(4) "Covered claim" means an unpaid claim, including one of unearned premiums, which is in excess of fifty dollars ($50.00) and arises out of and is within the coverage and not in excess of the applicable limits of an insurance policy to which [the Guaranty Act] applies as issued by an insurer, if such insurer becomes an insolvent insurer after the effective date of this Article and (i) the claimant or insured is a resident of this State at the time of the insured event; or (ii) the property from which the claim arises is permanently located in this State. "Covered claim" shall not include any amount awarded as punitive or exemplary damages; sought as a return of premium under any retrospective rating plan; or due any reinsurer, insurer, insurance pool, or underwriting association, as subrogation or contribution recoveries or otherwise.

*Id.* § 58-48-20(4) (2001). NCIGA sought reimbursement from GTCC for these payments under N.C.G.S. § 58-48-50(a1)(1), which states in pertinent part:

(a1) The [NCIGA] shall have the right to recover from the following persons the amount of any "covered claim" paid on behalf of such person pursuant to this Article:

(1) Any insured whose net worth on December 31 of the year next preceding the date the insurer becomes insolvent exceeds fifty million dollars ($50,000,000) and whose liability obligations to other persons are satisfied in whole or in part by payments under this Article[.]

---

2. Effective 10 June 2003, the definition of " '[c]overed claim' " was amended. Ch. 167, sec. 1, 2003 N.C. Sess. Laws at 228. For the reason stated in footnote one, the pre-amendment definition applies here. The amendment added the following to the end of subsection (4): " 'Covered claim' also shall not include . . . claims of any claimant whose net worth exceeds fifty million dollars . . . on December 31 of the year preceding the date the insurer becomes insolvent." *Id.* Prospectively, the situation here should no longer arise, as NCIGA would presumably no longer pay workers' compensation claims in lieu of an insolvent insurer of a high net worth employer, like GTCC, who would simply remain liable under the Workers' Compensation Act. *See* N.C.G.S. § 97-94 (2007). This decision thus applies only to a limited pool of employers and insurers.

N.C. INS. GUAR. ASS'N v. BOARD OF TR. OF GUILFORD TECHNICAL CMTY. COLL.

[364 N.C. 102 (2010)]

*Id.* § 58-48-50(a1)(1) (2001). GTCC has not disputed that its net worth exceeded fifty million dollars as of 31 December 2000, but it has denied NCIGA is entitled to reimbursement, arguing that sovereign immunity bars NCIGA's claim.

On 20 September 2005, NCIGA filed a declaratory judgment complaint in the Superior Court in Wake County seeking "a judicial determination . . . whether GTCC is obligated to reimburse the NCIGA under the terms of the Guaranty Act in connection with the . . . payments expended by the NCIGA in connection with 'covered claims' arising from the insolvency of Reliance." NCIGA sought an adjudication that "under the express terms of the Guaranty Act," specifically N.C.G.S. § 58-48-50(a1)(1), GTCC is obligated to reimburse NCIGA for: (1) "the $324,013.00 expended [on workers' compensation claims] by the NCIGA through August 19, 2005 made in connection with the insolvency of Reliance" and (2) "NCIGA's continuing administration and handling of 'covered [workers' compensation] claims' against GTCC arising from the insolvency of Reliance."

GTCC moved to dismiss NCIGA's complaint under Civil Procedure Rules 12(b)(1), 12(b)(2), and 12(b)(6) on the sole ground that NCIGA's claims for reimbursement against GTCC are barred by sovereign immunity. N.C.G.S. § 1A-1, Rules 12(b)(1), 12(b)(2), and 12(b)(6) (2007). NCIGA asserted that the North Carolina General Assembly "has waived GTCC's sovereign immunity relative to worker[s'] compensation claims" under N.C.G.S. § 97-7 and "has expressly authorized the State and community college institutions to purchase workers' compensation insurance" under N.C.G.S. § 115D-23. In addition, NCIGA noted that N.C.G.S. § 58-48-50(a1)(1) gives NCIGA the right to recover "the full amount of any 'covered claim' from **any insured**" who meets the fifty million dollar net worth requirement. In sum, NCIGA contended that because of the explicit waiver of sovereign immunity in N.C.G.S. § 97-7 and because, pursuant to N.C.G.S. § 115D-23, GTCC has been statutorily authorized to become an "insured" to cover the liabilities imposed by the Workers' Compensation Act, GTCC could not "assert sovereign immunity to avoid its responsibility to reimburse the NCIGA" under N.C.G.S. § 58-48-50(a1)(1). In an order entered on 27 January 2006, the trial court denied GTCC's motion to dismiss.

In a unanimous opinion, the Court of Appeals reversed, holding that NCIGA could not "defeat GTCC's sovereign immunity defense." *Guar. Ass'n v. Bd. of Trs.*, 185 N.C. App. at 524, 648 S.E.2d at 862.

N.C. INS. GUAR. ASS'N v. BOARD OF TR. OF GUILFORD TECHNICAL CMTY. COLL.

[364 N.C. 102 (2010)]

On 25 September 2007, NCIGA filed a petition for discretionary review with this Court, which we allowed on 11 December 2008.

## II. Analysis

Under the Guaranty Act, NCIGA's obligation to pay an employer's "covered [workers' compensation] claims" arises when the employer procures workers' compensation insurance from a licensed and authorized insurer that then becomes insolvent. *See* N.C.G.S. §§ 58-48-20(5), -48-35 (2007), -48-20(4) (2001). The Guaranty Act also gives NCIGA the right to reimbursement if it has made payments on workers' compensation claims for a high net worth employer whose insurer is insolvent. *See Id.* § 58-48-50(a1)(1). Thus, both NCIGA's obligations to pay an employer's (here, GTCC's) workers' compensation claims and its right to obtain reimbursement from "[a]ny insured" high net worth employer arise from GTCC's having elected to insure its underlying workers' compensation liability with Reliance. *Id.* Yet, the Guaranty Act is essentially silent on the question of sovereign immunity, and the term "insured" is not defined therein.

This Court has long held:

It is an established principle of jurisprudence, resting on grounds of sound public policy, that a state may not be sued in its own courts or elsewhere unless by statute it has consented to be sued or has otherwise waived its immunity from suit.

By application of this principle, a subordinate division of the state, or agency exercising statutory governmental functions . . . may be sued only when and as authorized by statute.

*Smith v. Hefner*, 235 N.C. 1, 6, 68 S.E.2d 783, 787 (1952) (citations omitted). "Waiver of sovereign immunity may not be lightly inferred and State statutes waiving this immunity, being in derogation of the sovereign right to immunity, must be strictly construed." *Guthrie v. N.C. State Ports Auth.*, 307 N.C. 522, 537-38, 299 S.E.2d 618, 627 (1983) (citations omitted). Consistent with these rules of construction, we have held that an express statutory waiver of sovereign immunity for a substantive claim made under one statute can continue and apply to a subsequent action seeking reimbursement from the State under a separate statute when the subsequent action "arises out of" the underlying substantive claim. *Teachy v. Coble Dairies, Inc.*, 306 N.C. 324, 332, 293 S.E.2d 182, 186-87 (1982) (holding that "[i]rrespective of whether G.S. Chapter 1B codifies the right to

108 IN THE SUPREME COURT

N.C. INS. GUAR. ASS'N v. BOARD OF TR. OF GUILFORD TECHNICAL CMTY. COLL.

[364 N.C. 102 (2010)]

indemnification[,] . . . . [t]he right to indemnification *arises out of a tort claim, the State's immunity to which was abrogated by the Tort Claims Act*," and consequently, "the State may be joined as a third-party defendant, whether in an action for contribution or in an action for indemnification, in the State courts" (emphasis added)). Similarly, the central issue before us here involves reimbursement that "arises out of" a substantive workers' compensation claim, "the State's immunity to which was abrogated by" section 97-7 of the Workers' Compensation Act. *Id.* at 332, 293 S.E.2d at 187.

The Workers' Compensation Act contains a clear and unmistakable waiver of the State's and its subdivisions' sovereign immunity with respect to workers' compensation claims by their employees. N.C.G.S. § 97-7 (2007). The Act provides, in pertinent part:

> Neither the State nor any municipal corporation within the State, nor any political subdivision thereof, nor any employee of the State or of any such corporation or subdivision, shall have the right to reject the provisions of this Article relative to payment and acceptance of compensation . . . [p]rovided, that all such corporations or subdivisions are hereby authorized to self-insure or purchase insurance to secure its liability under this Article and to include thereunder the liability of such subordinate governmental agencies as the county board of health, the school board, and other political and quasi-political subdivisions supported in whole or in part by the municipal corporation or political subdivision of the State.

*Id.*; *see Estes v. N.C. State Univ.*, 89 N.C. App. 55, 58, 365 S.E.2d 160, 161 (1988) ("G.S. [§] 97-7 extends the Workers' Compensation Act to the State. As an 'employer' under the Act, the State may not 'reject the provisions of [the] Article relative to payment and acceptance of compensation.' " (second alteration in original) (citations omitted)). Further, section 115D-23 specifically applies the Workers' Compensation Act to institutional employees of the state's community colleges. The statute requires the State Board of Community Colleges to "make the necessary arrangements to carry out those provisions of Chapter 97" for its employees and authorizes the board of trustees of each community college "to purchase insurance to cover workers' compensation liability." N.C.G.S. § 115D-23 (2007).

The General Assembly has mandated that every employer subject to the Workers' Compensation Act maintain the ability to pay compensation benefits, either by purchasing workers' compensation

N.C. INS. GUAR. ASS'N v. BOARD OF TR. OF GUILFORD TECHNICAL CMTY. COLL.

[364 N.C. 102 (2010)]

insurance from an "authorized corporation, association, organization, or in any mutual insurance association formed by a group of employers so authorized" or by self-insuring. *Id.* § 97-93 (2007). "The term 'employer' " includes, *inter alia,* "the State and all political subdivisions thereof, [and] all public and quasi-public corporations therein." *Id.* § 97-2(3) (2007). In section 115D-23 the General Assembly has specifically "authorized" the "board of trustees" of each community college "to purchase insurance to cover workers' compensation liability" if the institution elects not to self-insure. *Id.* § 115D-23. If an employer, including the State and its entities, elects to purchase workers' compensation insurance, it still must comply with the provisions of the Workers' Compensation Act and the Guaranty Act by purchasing insurance only from an entity that is licensed and authorized to transact insurance business in this State.

However, even if an employer purchases insurance to secure its liability, the employer still remains primarily liable to its injured employees for any claims that fall under Chapter 97 in the event its insurer becomes insolvent. *See id.* § 97-94 (2007); *Roberts v. City Ice & Coal Co.,* 210 N.C. 17, 21, 185 S.E. 438, 440-41 (1936). As this Court stated in *Roberts*:

> Standing alone, the proposition that the employer under the Work[ers'] Compensation Act should be relieved of liability for the compensation to his injured employee by reason of the insolvency of his insurance carrier would present no serious difficulty. The liability of the employer under the award is primary. He, by contract, may secure liability insurance for his protection, but his obligation to the injured employee is unimpaired. Into the construction of every act must be read the purpose of the Legislature, and the underlying purpose in this instance (Work[ers'] Compensation Act) was to give relief to work[ers]. This relief in the nature of things had to be charged against the employer.

> The primary consideration is compensation for injured employees. The title and theory of the act import the idea of compensation for work[ers] and their dependents.

> The statute requires the employer to insure and keep insured his liability or furnish proof of his own ability to pay the compensation. It is further provided that insolvency of the employer shall not relieve the insurer, and manifestly the insolvency of the

N.C. INS. GUAR. ASS'N v. BOARD OF TR. OF GUILFORD TECHNICAL CMTY. COLL.

[364 N.C. 102 (2010)]

insurer should not relieve the insured, nothing else appearing. The obligation of the insurance company is to insure the employer against liability under the act, and while the statute gives to insurer the right of subrogation, that is for the benefit of the insurer and not intended to impair the right of the injured work[er] to compensation from the insured employer.

210 N.C. at 21, 185 S.E. at 440-41 (citations and internal quotation marks omitted). Thus, according to the Workers' Compensation Act and the principle enunciated in *Roberts*, GTCC remained at all times primarily liable on any workers' compensation claims at issue here.

" 'Legislative intent controls the meaning of a statute; and in ascertaining this intent, a court must consider the act as a whole, weighing the language of the statute, its spirit, and that which the statute seeks to accomplish.' " *Hyler v. GTE Prods., Co.*, 333 N.C. 258, 262, 425 S.E.2d 698, 701 (1993) (citations omitted), *superseded in part by statute*, Workers' Compensation Reform Act of 1994, ch. 679, sec. 2.5, 1993 N.C. Sess. Laws 394, 399-400 (enacting N.C.G.S. § 97-25.1 (2007)). As noted by this Court, the Workers' Compensation Act is a remedial statutory scheme:

Where radical and systematic changes have been made in setting up a system of such wide scope as we find in the Work[ers'] Compensation Act, *and one so markedly remedial in its nature*, the break with the past must necessarily be viewed with liberality in order to accomplish its purposes; and its provisions, liberally construed, given that effectiveness which alone will protect the act from erosion and regression.

*Essick v. City of Lexington*, 232 N.C. 200, 208, 60 S.E.2d 106, 112 (1950) (emphasis added). " '[T]he underlying purpose . . . [of the] (Work[ers'] Compensation Act) [is] to give relief to work[ers].' " *Roberts*, 210 N.C. at 21, 185 S.E. at 440 (citation omitted). Thus, the "primary consideration" in enacting the Workers' Compensation Act was to compensate injured employees. *Id.* Because, in general, the Workers' Compensation Act is the exclusive means for employees to recover compensation due to work-related injury or illness,[3] carrying out this remedial purpose is its core function. As such, the waiver of

---

3. *See* N.C.G.S. § 97-10.1 (2007) ("If the employee and the employer are subject to and have complied with the provisions of [the Workers' Compensation Act], then the rights and remedies herein granted to the employee, his dependents, next of kin, or personal representative shall exclude all other rights and remedies of the employee, his dependents, next of kin, or representative as against the employer at common law or otherwise on account of such injury or death.").

N.C. INS. GUAR. ASS'N v. BOARD OF TR. OF GUILFORD TECHNICAL CMTY. COLL.

[364 N.C. 102 (2010)]

sovereign immunity in N.C.G.S. § 97-7 should be construed and applied to statutes, such as the Guaranty Act, in a manner that effectuates the primary purpose of the Workers' Compensation Act.

Enacted in 1971, the Guaranty Act "ha[s] one basic purpose: to better protect North Carolina claimants and policyholders." *State ex rel. Ingram v. Reserve Ins. Co.*, 303 N.C. 623, 627-28, 281 S.E.2d 16, 19 (1981). As our legislature has stated:

> The purpose of [the Guaranty Act] is to provide a mechanism .for the payment of covered claims under certain insurance policies, to avoid excessive delay in payment, and to avoid financial loss to claimants or policyholders because of the insolvency of an insurer, to assist in the detection and prevention of insurer insolvencies, and to provide an association to assess the cost of such protection among insurers.

N.C.G.S. § 58-48-5 (2007). With regard to workers' compensation claims, the Guaranty Act ensures that employees will be compensated in a timely manner even when the employer's insurer becomes insolvent. *See id.* § 58-48-35. As such, the provisions of the Guaranty Act pertaining to NCIGA's workers' compensation account are intended to promote the goals of the Workers' Compensation Act, and as our legislature has instructed, the Guaranty Act "shall be liberally construed to effect the purpose under G.S. 58-48-5 which shall constitute an aid and guide to [its] interpretation." *Id.* § 58-48-15 (2007).

Section 58-40-50(a1)(1) allows NCIGA's workers' compensation account to be reimbursed by high net worth employers, who are well situated to absorb the impact of their insurer's insolvency, thereby reflecting the legislature's intent that the funds be replenished for the benefit of other potential workers' compensation claimants. Reimbursement by high net worth employers also ensures that funds are available to pay the claims of smaller employers, who are less likely to be able to pay workers' compensation claims in the event their insurer becomes insolvent and who may be at greater risk of insolvency themselves. In addition, the Guaranty Act provides greater protection for workers' compensation claims than for claims arising from other forms of insurance that are subject to the Guaranty Act. *See id.* § 58-48-35(a)(1) (stating, *inter alia*, that: (1) although NCIGA's "obligation includes only the amount of each covered claim that is in excess of fifty dollars ($50.00) and is less than three hundred thousand dollars ($300,000)," NCIGA "*shall pay the*

N.C. INS. GUAR. ASS'N v. BOARD OF TR. OF GUILFORD TECHNICAL CMTY. COLL.

[364 N.C. 102 (2010)]

*full amount of a covered claim for benefits under [] workers' compensation insurance*"; and (2) NCIGA is not obligated to "pay a claimant's covered claim, *except a claimant's workers' compensation claim* if . . . [t]he insured had primary coverage at the time of the loss with a solvent insurer" in a minimum amount specified by statute. (emphases added)).

### III. Conclusion

The legislative intent behind the Workers' Compensation Act has always been to provide workers secure, timely compensation. The provisions of the Guaranty Act, both those involving the payment of workers' compensation claims due to insurer insolvency and those requiring repayment of said amounts by affected employers with a high net worth, are designed to further this purpose. The legislature has clearly waived sovereign immunity through the Workers' Compensation Act for claims by governmental employees, and this waiver applies to the provisions of the Guaranty Act involving workers' compensation insurance. This interpretation follows the long-standing requirement that a statutory waiver of immunity be strictly construed, in accordance with a clearly expressed legislative intent. *See Teachy*, 306 N.C. at 331, 293 S.E.2d at 186 (stating that "the abrogation of sovereign immunity" does not "impel[] such a strict construction as to thwart . . . obvious legislative intent" (citations omitted)). Thus, we conclude that the legislature has clearly and explicitly waived sovereign immunity for these underlying workers' compensation claims, that N.C.G.S. § 58-48-50(a1)(1) applies to GTCC, and that GTCC's motion to dismiss should not have been allowed. Accordingly, we reverse the decision of the Court of Appeals and instruct that court to reinstate the order of the trial court.

REVERSED.

Justice EDMUNDS dissenting.

Briefly stated, the issue in this case is whether the doctrine of sovereign immunity bars NCIGA from recovering from GTCC funds paid by NCIGA to cover workers' compensation claims filed against GTCC once Reliance Insurance Company, which had carried GTCC's workers' compensation policy, became insolvent.

The Insurance Guaranty Association Act creating NCIGA contains no waiver of sovereign immunity. N.C.G.S. ch. 58, art. 48 (2009). The majority nevertheless applies the waiver in N.C.G.S. § 97-7, in

N.C. INS. GUAR. ASS'N v. BOARD OF TR. OF GUILFORD TECHNICAL CMTY. COLL.

[364 N.C. 102 (2010)]

which the General Assembly expressly waived sovereign immunity for workers' compensation claims brought against the State. That statute also permits governmental entities to purchase insurance to secure their liability under the Workers' Compensation Act. *Id.* § 97-7 (2009). However, no workers' compensation claims directly underlie this case. Every worker who had a valid covered claim apparently has been compensated or will be compensated by NCIGA. The question now is whether GTCC must reimburse NCIGA. Because no workers' compensation claims are at stake, the waiver of sovereign immunity in section 97-7 is inapplicable. In the absence of an applicable waiver, sovereign immunity applies and GTCC is not liable.

Although the majority cites *Teachy v. Coble Dairies, Inc.*, 306 N.C. 324, 293 S.E.2d 182 (1982), as authority for its interpretation that waivers found in one statute can be portaged over to another statute, that case is distinguishable. In *Teachy*, the plaintiff sued the defendants for wrongful death arising out of a traffic collision. *Id.* at 325, 293 S.E.2d at 183. The defendants then filed a third-party complaint against the North Carolina Department of Transportation, alleging that a traffic light at the intersection where the accident occurred had been maintained negligently. *Id.* at 326, 293 S.E.2d at 183. When the State argued that sovereign immunity shielded it from suit, we found that the common-law "right to indemnification of a passively negligent tort-feasor from an actively negligent tort-feasor" arose out of the underlying tort claim and that the State had waived immunity from such indemnification claims in the Tort Claims Act. *Id.* at 332, 293 S.E.2d at 186-87. Thus, the tort theory of negligence directly underlay both the plaintiff's original claim and the defendants' subsequent claim against DOT, and the Tort Claims Act waived sovereign immunity in such suits.

In contrast, the majority here bootstraps a statutory waiver of sovereign immunity that is applicable only to workers' compensation claims into a suit over insurance liability brought by plaintiff NCIGA against defendant GTCC under the Insurance Guaranty Association Act, not the Workers' Compensation Act. The original claims between GTCC and the injured workers involved workers' compensation liability and were insured by third party Reliance. The majority's determination, that the workers' compensation waiver in section 97-7 reaches as far as claims by a fourth party (NCIGA) for indemnification of the insurance liability of insolvent third party Reliance, is an unwarranted extension of the holding in *Teachy*.

**IN RE BELK**

[364 N.C. 114 (2010)]

The majority correctly notes that this Court historically has been reluctant to find exceptions to the long-standing doctrine of sovereign immunity when the General Assembly has not explicitly set out a waiver. *See Guthrie v. N.C. State Ports Auth.*, 307 N.C. 522, 537-38, 299 S.E.2d 618, 627 (1983) ("Waiver of sovereign immunity may not be lightly inferred and State statutes waiving this immunity, being in derogation of the sovereign right to immunity, must be strictly construed.") (citation omitted). While I agree with the majority that the 2003 amendments to the applicable statutes may prevent a repetition of the immediate issue presented here, the majority's methodology is contrary to the letter and the spirit of *Guthrie* and invites creative attempts to circumvent sovereign immunity. Accordingly, I respectfully dissent.

Chief Justice PARKER and Justice TIMMONS-GOODSON join in this dissenting opinion.