Justice HUDSON
dissenting.
The majority holds that an employment contract modified in North Carolina does not qualify as one “made” in North Carolina for purposes of conferring subject matter jurisdiction on the North Carolina Industrial Commission, even when the modifications to the employment relationship are substantial and where it is undisputed that it was impossible for the employment relationship to continue on the original terms. In my *321 view, this holding contradicts the long-standing rale that North Carolina courts must liberally construe the Workers’ Compensation Act in favor of providing relief to workers injured in the scope of their employment. Accordingly, I respectfully dissent.
The statute at issue here, N.C.G.S. § 97-36, governs when an employee may be entitled to compensation for a work-related accident that occurs outside North Carolina. Section 97-36 provides in relevant part:
Where an accident happens while the employee is employed elsewhere than in this State and the accident is one which would entitle him or his dependents or next of kin to compensation if it had happened in this State, then the employee or his dependents or next of kin shall be entitled to compensation... if the contract of employment was made in this State ....
N.C.G.S. § 97-36 (2013). In interpreting this provision, it is well settled that the Workers’ Compensation Act, including section 97-36, “must necessarily be viewed with liberality in order to accomplish its purpose[ ]” of providing compensation to employees injured during the course and within the scope of their employment. Essick v. City of Lexington, 232 N.C. 200, 208, 60 S.E.2d 106, 112 (1950); see also Johnson v. Asheville Hosiery Co., 199 N.C. 38, 40, 153 S.E. 591, 593 (1930) (“It is generally held by the courts that the various Compensation Acts of the Union should be liberally construed to the end that the benefits thereof should not be denied upon technical, narrow and strict interpretation.”). The question presented here is whether a contract of employment qualifies as a contract “made” in North Carolina when an employee is given a choice between termination and continuing the relationship under terms so significantly different that the arrangement amounts, in effect, to a new contract. I conclude that, on the facts presented here and against that liberal interpretive backdrop, it does.
Here, plaintiff first accepted an offer of employment with defendant U.S. Foods in May 2000. For two years, he worked as a delivery track driver with an assigned drop yard in Columbia, South Carolina and a planned route in the Augusta, Georgia area. The customers to whom plaintiff made deliveries included health care facilities, convenience stores, and restaurants. While there was some variation among these customers, most of them remained the same during the time plaintiff had that route.
In 2002, U.S. Foods merged with another company, PYA Monarch, and defendant elected to close the Columbia drop yard. Plaintiff, like *322 many other employees based out of the Columbia location, was given a choice: He could either accept termination and a severance package, or he could transfer to a division based in Lexington, South Carolina, or one located in Charlotte, North Carolina. Because the Columbia drop yard was closing, the parties did not have the option of continuing the employment relationship as it had existed up to that point. Faced with this decision, plaintiff chose transfer to the Charlotte-based division of the company. Plaintiff also negotiated for and received an additional benefit; specifically, plaintiff and defendant agreed that while plaintiff worked out of the Charlotte-based division, U.S. Foods would deliver plaintiff’s loaded trailer to him in Augusta, Georgia. The company’s Human Resources Department, which was also located' in Charlotte, approved the transfer in October 2002, thereby finalizing the new agreement.
Once he came under the supervision of the Charlotte-based division of the company, plaintiff’s employment changed in several, other ways as well. As plaintiff described in his testimony before the Industrial Commission, he drove a new route and his “customers changed completely.” While he had previously made deliveries to health care facilities, convenience stores, and restaurants, the “bulk” of plaintiff’s deliveries when he was based in Charlotte were to chain restaurants such as Sonic, KFC, Subway, and IHOP. In addition, the method by which plaintiff’s pay was calculated was changed. When he was based in South Carolina, plaintiff was paid based on an hourly weight-based commission system, under which he earned approximately $400 to $500 per week. In North Carolina, however, he was first paid an hourly rate, then under a component-based system.[1] Under the component-based system, plaintiff eventually earned more than twice as much as under the commission-based system, up to $1400 per week.
In sum: When U.S. Foods merged with PYA Monarch, plaintiff was faced with either termination or transfer to a division based in another State. Plaintiff chose transfer to North Carolina and bargained for the inclusion of specific contractual terms under the new arrangement. Upon approval by defendant’s Charlotte-based Human Resources Department, plaintiff had a new supervisor stationed in a new state. Plaintiff then drove a new route, served new customers, and earned significantly more *323 money through the use of a new method of calculating his pay. On the whole, it appears that the only characteristics of the employment relationship that remained the same were plaintiff’s general duties and title as a delivery driver, and the name of his employer.
In my view, then, this was no mere modification, as when an employee accepts a modest pay increase in exchange for taking on modest new responsibilities. Rather, I conclude that the required break from the old employment arrangement, paired with significant changes in how plaintiff’s employment would proceed moving forward, warrants treating this arrangement as a new contract — one finalized when defendant’s Human Resources Department in Charlotte approved the arrangement. Based on these facts, and in light of the requirement that we liberally construe the Workers’ Compensation Act in favor of awarding benefits, see, e.g., Essick, 232 N.C. at 208, 60 S.E.2d at 112, I would hold that the contract in place when plaintiff suffered his work-related injury on 23 September 2009 was a contract “made” in North Carolina for purposes of N.C.G.S. § 97-36, and that the North Carolina Industrial Commission has jurisdiction over plaintiff’s claim. On this basis, I would affirm the decision of the Court of Appeals. Therefore, I respectfully dissent.
Justices BEASLEY and ERVIN join in this dissenting opinion.

. Under the commission system, delivery drivers’ wages were based primarily on the weight of the cargo they delivered. In contrast, under the component system, in addition to receiving a base pay, drivers are paid based on a number of factors including a safety bonus, the hours worked, and the number of stops and items of cargo.