N.C. BD. OF EXAM. FOR SPEECH PATH. v. N.C. STATE BD. OF EDUC.

[122 N.C. App. 15 (1996)]

NORTH CAROLINA BOARD OF EXAMINERS FOR SPEECH AND LANGUAGE PATHOLOGISTS AND AUDIOLOGISTS, Plaintiff v. NORTH CAROLINA STATE BOARD OF EDUCATION, BOBBY R. ETHERIDGE, Superintendent of Public Instruction, NORTH CAROLINA DEPARTMENT OF PUBLIC INSTRUCTION, GUILFORD COUNTY BOARD OF EDUCATION, DAVIE COUNTY BOARD OF EDUCATION, IREDELL COUNTY BOARD OF EDUCATION, MECKLENBURG COUNTY BOARD OF EDUCATION, COLUMBUS COUNTY BOARD OF EDUCATION, BURKE COUNTY BOARD OF EDUCATION, LAURA SZENASY, JANE IRENE FERREE, ELIZABETH TUTTLE CARTER, PATRICIA YODER, KATHY WIANT, and BERNADINE ARMSTRONG, Defendants

No. COA94-1208

(Filed 19 March 1996)

**Professions and Occupations § 1 (NCI4th); Schools § 140 (NCI4th)— non-licensed speech pathologists in public schools—appropriate credential under Licensure Act— summary judgment improper**

In a declaratory judgment action where plaintiffs sought construction of N.C.G.S. § 90-294(c)(4), which concerns exemptions from the licensing requirements of the Licensure Act for Speech and Language Pathologists and Audiologists, and where plaintiff asserted that persons not qualified under the Licensure Act were being employed in North Carolina's public school system to practice speech pathology, the trial court erred in granting summary judgment for defendants, since defendants were bound by the Licensure Act rather than the *Certification Manual* of the Department of Public Instruction (DPI); N.C.G.S. § 115C-296(a), which gives the State Board of Education control of certifying all applicants for teaching positions, did not equate teachers and speech pathologists; the exclusive authority given the State Board of Education to supervise and administer the public school system was subject to review and limitation by acts of the General Assembly; an exemption from the Licensure Act allowing non-licensed speech pathologists to be employed by the DPI was wholly dependent upon the DPI's issuance of a well grounded credential to the person hired to render speech pathology services; and there was insufficient evidence concerning the DPI's speech credentialing standard in the record from which the trial court could have measured whether DPI's speech pathology certification was a valid and current credential under the Licensure Act.

**Am Jur 2d, Summary Judgment § 22.**

**N.C. BD. OF EXAM. FOR SPEECH PATH. v. N.C. STATE BD. OF EDUC.**

[122 N.C. App. 15 (1996)]

Judge Greene dissenting.

Appeal by plaintiff from judgment entered 30 August 1994 by Judge Narley T. Cashwell in Wake County Superior Court. Heard in the Court of Appeals 18 October 1995.

*Randall, Jervis & Hill, by John C. Randall, for plaintiff appellant.*

*Attorney General Michael F. Easley, by Assistant Attorney General Barbara A. Shaw, for the State.*

SMITH, Judge.

This appeal is from a grant of summary judgment in a declaratory judgment action instituted by the North Carolina Board of Examiners for Speech and Language Pathologists and Audiologists ("Examiners" or "Board of Examiners"). The trial court granted summary judgment for defendants, the North Carolina Board of Education, the Department of Public Instruction (DPI), and individuals employed in public schools as speech pathologists. By its declaratory judgment petition, Examiners seek construction of N.C. Gen. Stat. § 90-294(c)(4) (1993), which concerns exemptions from the licensing requirements of the Licensure Act for Speech and Language Pathologists and Audiologists (the "Licensure Act" or "Act"), N.C. Gen. Stat. § 90-292 to -319. Plaintiff asserts that persons not qualified under the Licensure Act are being employed in North Carolina's public school systems to practice speech pathology; thus the trial court "misinterpreted and misapplied the appropriate statutes" in granting summary judgment for defendants. We agree and reverse.

A speech pathologist is defined by statute as follows:

"Speech and language pathologist" means any person who represents himself to the public by title or by description of services, methods, or procedures as one who evaluates, examines, instructs, or counsels persons suffering from conditions or disorders affecting speech and language. A person is deemed to be a speech and language pathologist if he offers such services under any title incorporating the words "speech pathology," "speech pathologist," . . . or any similar title or description of service.

N.C. Gen. Stat. § 90-293(5) (1993). In North Carolina, a person practicing speech pathology must either obtain a license from the Board of Examiners, or fall within one of the exemptions provided by N.C.

Gen. Stat. § 90-294. The exemption at issue is § 90-294(c)(4), which reads:

> A person who holds a valid and current credential as a speech and language pathologist or audiologist issued by the North Carolina Department of Public Instruction . . . if such person practices speech and language pathology or audiology in a salaried position solely within the confines or under the jurisdiction of the Department of Public Instruction . . . .

The question which arises is whether DPI is issuing "certifications" to practitioners of speech pathology who do not meet statutory criteria. Plaintiffs maintain persons are being employed within North Carolina local school systems as speech pathologists, who have not been licensed, and who do not fall within the exemptions from licensing provided by the Act.

The party moving for summary judgment bears the burden of showing the absence of any genuine issue of material fact, and entitlement to judgment as a matter of law. *Moore v. City of Creedmoor*, 120 N.C. App. 27, 36, 460 S.E.2d 899, 904 (1995). In addition, the record is to be viewed in the light most favorable to the non-movant, giving it the benefit of all inferences which reasonably arise therefrom. *Id.*

Plaintiffs claim that several of defendants have been issued certificates as speech pathologists by DPI, without holding a "valid and current credential" as intended by the Licensure Act. *Id.* To demonstrate defendants' noncompliance with the Act, plaintiffs cite Section .1529 of *Procedures Governing Programs and Services for Children with Special Needs*, Exceptional Children's Services, State Department of Public Instruction (1993 ed.) (hereinafter "Section .1529" or *"Procedures"*). Plaintiffs argue *Procedures* sets a minimum certification standard for a "valid credential," as *Procedures* was purportedly adopted as policy by the State Board of Education. In *Procedures*, the minimum qualifications for certification are described as "certification at the master's level." Inexplicably, Section .1529 is used as authority for this proposition by plaintiffs, without reference to anything clearly denoting its legal force or value. Moreover, there is evidence in the record which indicates that Section .1529 and other related rules were repealed by DPI on 1 July 1986.

Defendants deny they are bound by the express wording of the Section .1529 policy, or the Licensure Act, for three reasons. First,

N.C. BD. OF EXAM. FOR SPEECH PATH. v. N.C. STATE BD. OF EDUC.

[122 N.C. App. 15 (1996)]

defendants argue that *Procedures* Section .1529 was amended by the State Board in 1990 through DPI's *Certification Manual, Standards and Procedures for the Certification of North Carolina Professional School Personnel* (1990) (the *"Manual"*). Defendants argue the *Manual* outlines the standard for a valid speech pathologist credential. The *Manual*, in a section named "Qualifying Criteria for Provisional Certification," lists DPI's criteria for granting "provisional" or "continuing" speech pathologist certifications.

Secondly, defendants maintain the ambit of their institutional power extends to making "[determinations of] the qualifications necessary to hold a valid certificate or license to teach in the public schools." Defendants argue this institutional power derives from N.C. Gen. Stat. § 115C-296(a) (1994), which reads: "The State Board of Education shall have entire control of certifying all applicants for teaching positions in all public elementary and high schools of North Carolina . . . ."

And finally, defendants argue:

The State Board's authority regarding certification of school professionals does not derive from the General Assembly at all. Unlike any other state agency, the Constitution itself grants the State Board plenary authority to regulate the professional qualifications of superintendents, principals, teachers and other specialists in the schools.

We now, in turn, address defendants' arguments.

We are unable to recognize the DPI *Manual* as authority worthy of consideration for two reasons. First, the record is devoid of any evidence that the provisions of the DPI *Manual* were: (1) passed by the State Board, (2) properly established as regulations by DPI, or (3) intended to amend or clarify Section .1529. Needless to say, the function of DPI is to "administer . . . all policies established by the Board [of Education]." N.C. Gen. Stat. 115C-21(b)(1) (1994). DPI may not take any action contradictory to a properly enacted regulation or policy of the State Board of Education. *Id.* Second, the DPI *Manual* describes, treats, and includes speech pathologists as merely a subcategory or type of "Teacher." This attempt to equate practitioners of speech pathology with public schoolteachers is at odds with the applicable statutory framework established by our legislature through the Licensure Act.

Defendants' evidence in the record, and their brief on appeal, repeatedly refer to speech pathologists as "teacher[s] of speech-language impaired students." Defendants claim "entire control of certifying all applicants for teaching positions in all public elementary and high schools of North Carolina." *Ergo*, defendants assume that their power to credential speech pathologists exists inherently in the regulatory authority granted them over teachers. Defendants argue this power derives from N.C. Gen. Stat. §§ 115C-296(a) (1994) and 115C-315(d) (1994).

Neither of these statutes, however, grant defendants the power they claim. N.C. Gen. Stat. § 115C-296(a) provides the "State Board of Education [with] entire control of certifying all applicants for teaching positions . . . ." Section 115C-315 is codified in Article 21, entitled "Other Employees." Section 115C-315 regulates the hiring of Janitors and Maids, and provides for "Certification for Professional Positions." *See* § 115C-315(a), (d). We are not persuaded the legislature intended to equate teachers with speech pathologists. If it had been so intended, enactment of the exemption set forth in N.C. Gen. Stat. § 90-294(c)(4) was unnecessary. We are not convinced the legislature intended to create two rival certification procedures for public school speech pathologists or that either of these statutes supplement, ameliorate or modify the Licensure Act.

In so holding, we adhere to the principles pronounced in *Utilities Comm. v. Electric Membership Corp.*, 3 N.C. App. 309, 314, 164 S.E.2d 889, 892 (1968). There, this Court espoused

"[w]here one statute deals with the subject matter in detail with reference to a *particular situation* and another statute deals with the same subject matter in *general* and comprehensive terms, the particular statute will be construed as controlling in the particular situation unless it clearly appears that the General Assembly intended to make the general act controlling in regard thereto, especially when the particular statute is *later enacted*."

*Id.* (quoting 7 Strong, N.C. Index 2d, *Statutes* § 5, p. 73) (emphasis added). Applying this rule, we note that §§ 115C-296 and 115C-315 were enacted, in pertinent part, by our legislature in 1955. *See* 1955 N.C. Sess. Laws ch. 1372, art. 18, § 2 and art. 5, § 4. The Licensure Act, asserted as exclusively controlling by plaintiffs, was enacted much later, in 1975. *See* 1975 N.C. Sess. Laws ch. 773, § 1. Unquestionably, the Licensure Act is more specific to the matter at hand, as the Act applies only to speech and language pathologists and audiologists.

N.C. BD. OF EXAM. FOR SPEECH PATH. v. N.C. STATE BD. OF EDUC.

[122 N.C. App. 15 (1996)]

Thus, we agree with plaintiffs that the Licensure Act, alone, governs this dispute.

In addition, it is the obligation of this Court to construe the statutes at hand so as not to defeat or impair their respective objectives. *State v. Hart*, 287 N.C. 76, 80, 213 S.E.2d 291, 295 (1975). Were we to read the language of § 115C-315(d) (the "State Board of Education shall have entire control of certifying all applicants for professional positions") as preeminent over the provisions of the Licensure Act, we would eviscerate the purpose of that Act. The Licensure Act exists to delimit the qualifications of all persons performing the functions of a speech pathologist, no matter what the setting. Allowing defendants their definition of §§ 115C-315 or 115C-296 would undo an act of our legislature. Such an action exceeds the scope of our function, which is to interpret, not repeal, statutes. *State v. Bell*, 184 N.C. 701, 705, 115 S.E. 190, 192 (1922).

Finally, defendants claim "exclusive authority to regulate the professional qualifications of persons employed in North Carolina schools" as "the Constitution itself grants the State Board [this] plenary authority." This power is unfettered, the Board of Education asserts, as its "authority regarding certification of school professionals *does not derive from the General Assembly at all.*" (Emphasis added.) Defendants have misapprehended their power under the N.C. Constitution and the Act. Certainly, they are subject to both. Article IX, § 5 of the North Carolina Constitution is unambiguous on this point, as it states: "The State Board of Education shall supervise and administer the free public school system . . . and shall make all needed rules and regulations in relation thereto, *subject to laws enacted by the General Assembly.*" (Emphasis added.) Moreover, this Constitutional provision was interpreted by our Supreme Court in *Guthrie v. Taylor*, 279 N.C. 703, 710, 185 S.E.2d 193, 198 (1971), *cert. denied*, 406 U.S. 920, 32 L.Ed.2d 119 (1972). There the Court held that Article IX, § 5 "was designed to make, and did make, the powers so conferred upon the State Board of Education subject to limitation and revision by acts of the General Assembly." *Id.*

The Licensure Act at issue here provides explicit limitations upon the Board of Education and DPI. The Act was passed by our General Assembly in 1975, and is unquestionably constitutionally sound under *Guthrie*. *Id.*; and *see* N.C. Gen. Stat. § 90-292. Thus, defendants' claims of "plenary power" to regulate speech pathologists are meritless. Exemptions for speech pathologists under the Act, for persons

practicing "under the jurisdiction of the Department of Public Instruction," are conditioned upon the grant of a "valid and current credential" by DPI. *See Bd. of Examiners for Speech v. State Bd. of Education,* 77 N.C. App. 159, 160, 163, 334 S.E.2d 503, 504, 506 (1985) (quoting N.C. Gen Stat. § 90-294(c)(4)).

Since a legislative body is presumed not to have used superfluous words, our courts must accord meaning, if possible, to every word in a statute. *See* 2A Norman Singer, *Sutherland Statutory Construction* § 47.37 (5th ed. 1992). Under this rule of construction, we must assume our legislature assigned an operative meaning to the word "valid." By the terms of § 90-294(c)(4), a certification by DPI is not exempt unless it constitutes a "valid and current credential." *See State Bd. of Education,* 77 N.C. App. at 160, 163, 334 S.E.2d at 504, 506. Valid means "well-grounded; sound." *The American Heritage Dictionary* 457 (2d ed. 1976). Therefore, an exemption from the Act, allowing non-licensed speech pathologists to be employed by DPI, is wholly dependent upon DPI issuing a well-grounded credential to the person hired to render speech pathology services.

In the absence of an express definition of a "valid and current credential" within the Act itself, we turn to the Licensure Act's Declaration of Policy for illumination. The Declaration of Policy set forth in N.C. Gen. Stat. § 90-292 establishes that:

> It is declared to be a policy of the State of North Carolina that, in order to safeguard the public health, safety, and welfare; *to protect the public from being misled by incompetent,* unscrupulous, and unauthorized persons and from unprofessional conduct on the part of qualified speech and language pathologists and audiologists and to help assure the availability of the *highest possible quality* speech and language pathology and audiology services to the communicatively handicapped people of this State, it is necessary to provide regulatory authority over persons offering speech and language pathology and audiology services to the public. .

(Emphasis added.) Under the analysis of the *State Bd. of Education* Court, it is evident the Declaration of Policy from § 90-292 exists as more than rhetorical refrain. That Court interpreted § 90-292 as having substantive effect, "requir[ing] an applicant to have in-depth training and education . . . consistent with [the Act's] aim of providing for the 'highest possible quality speech and language pathology services to the communicatively handicapped people of this State.' " *State Bd.*

N.C. BD. OF EXAM. FOR SPEECH PATH. v. N.C. STATE BD. OF EDUC.

[122 N.C. App. 15 (1996)]

*of Education*, 77 N.C. App. at 163, 334 S.E.2d at 505-06 (quoting § 90-292).

Though "highest possible quality" is itself an amorphous characterization, we are guided by the canons of statutory construction in determining the meaning of this phraseology. When statutes relate to, or are applicable to the same matter or subject, they must be construed together, *in pari materia*, to ascertain legislative intent. *See Carver v. Carver*, 310 N.C. 669, 674, 314 S.E.2d 739, 742 (1984). Based on the foregoing, it is inescapable that the intent of the legislature was to ensure, in every instance, that only qualified persons engage in the practice of speech pathology. A qualified speech pathologist is a person competent to provide high quality speech pathology services to the communicatively disabled. *See* § 90-292. The legislature, through the Act, defined the practice of speech pathology as

> the application of principles, methods, and procedures for the measurement, testing, evaluation, prediction, counseling, instruction, habilitation, or rehabilitation related to the development and disorders of speech, voice, or language for the purpose of identifying, preventing, ameliorating, or modifying such disorders.

N.C. Gen. Stat. § 90-293(7). This description is in essence a floor, establishing a minimum standard for any person providing speech pathology services in North Carolina. Application of these principles, methods, and procedures to the cure of health-oriented disorders implies a requisite level of expertise equal to that necessary to perform the enumerated tasks.

Simultaneously, for the § 90-294(c)(4) exemption to have any meaning whatsoever, the requirements implied by the Act's definition of the practice of speech pathology, and the policy declaration, must be less than the requirements set forth in § 90-295, which sets the standard for permanent licensing by the Board of Examiners. We find the definition of the practice of speech pathology in § 90-293(7) operative as a minimum credentialing standard, as only a person capable of competent, high quality speech pathology services may practice within the public school systems. At the same time, we recognize the requirements for § 90-295 licensure by the Board of Examiners must act as a ceiling—because, for the exemption itself to have meaning, DPI must be empowered under the Act to credential a speech pathologist not otherwise eligible for permanent licensure. This means a valid and current credential will be one which denotes that a person is competent to practice speech pathology, who nevertheless falls

N.C. BD. OF EXAM. FOR SPEECH PATH. v. N.C. STATE BD. OF EDUC.

[122 N.C. App. 15 (1996)]

short of the requirements for permanent licensure. However, rendering such an interstitial determination is beyond the power of this Court.

The legislature has not provided us with any enumerated standard for a valid credential under the Licensure Act's DPI exemption. Thus, the only statutory guidance available is the substantive direction and meaning given by the Licensure Act's: (1) Policy Declaration, (2) definition of the practice of speech pathology, and (3) use of the term "valid and current credential" as a prerequisite to the exemption. However, neither party to this case has presented competent evidence, applicable to these statutory standards, which might allow for judgment as a matter of law.

In a declaratory judgment action, the onus is on the litigants to present the court with a focused, concrete problem. *Lide v. Mears*, 231 N.C. 111, 117-18, 56 S.E.2d 404, 409 (1949); and *see* N.C. Gen. Stat. § 1-253 (1983). The right to seek a declaratory judgment does not "license litigants to fish in judicial ponds for advice." *Mears*, 231 N.C. at 117, 56 S.E.2d at 409. On remand, the burden is on the litigants to present evidence from which the trial court may determine the standards being applied by DPI to grant a valid and current speech pathology credential. It is not the court's function to write the State Board of Education's speech pathologist credentials for them. The only role for the trial court on remand will be to measure a State Board of Education credential, properly adopted, against the Licensure Act as interpreted by this Court, and then determine the credential's validity or invalidity. If no such credential exists, then no one employed by the North Carolina public schools practicing speech pathology is exempt, and all must meet the requirements for permanent licensure. *See* § 90-294(c)(4) and § 90-295.

Given the dearth of evidence concerning the State Board of Education's speech pathology credentialing standard in the record, we conclude the trial court could not have properly granted summary judgment. The record is devoid of material facts from which the trial court could have measured whether DPI's speech pathology certification is a "valid and current credential" under the Licensure Act. As such, we find the trial court's grant of summary judgment to be error as a matter of law, and

Reverse and remand.

N.C. BD. OF EXAM. FOR SPEECH PATH. v. N.C. STATE BD. OF EDUC.

[122 N.C. App. 15 (1996)]

Chief Judge ARNOLD concurs.

Judge GREENE dissents.

Judge GREENE dissenting.

I believe the trial court properly granted defendants' motion for summary judgment. Accordingly, I dissent.

As a general rule "[n]o person may practice or hold himself out as being able to practice speech and language pathology . . . in this State unless such person holds a current, unsuspended, unrevoked license issued by the Board" of Examiners for Speech and Language Pathologists and Audiologists (Board). N.C.G.S. § 90-294(b) (1993) (Licensure Act). There are several persons excluded from this licensing requirement including any:

> person who holds a *valid and current credential* as a speech and language pathologist . . . issued by the North Carolina Department of Public Instruction . . . if such person practices speech and language pathology . . . in a salaried position solely within the confines or under the jurisdiction of the Department of Public Instruction.

N.C.G.S. § 90-294(c)(4) (1993) (emphasis added).

The issue in this case is whether teachers in the public schools employed on a "provisional" basis to teach speech-language impaired students are required to be licensed by the Board.

The Board concedes that "persons practicing speech pathology in the public schools who hold the *regular, standard, unqualified certification* for speech pathology of the Department of Public Instruction and State Board of Education" are exempt from the Licensure Act. The Board argues, however, that public school "provisional" personnel teaching speech-language impaired students are not exempt from the Licensure Act because these teachers do not have a master's degree in speech and language pathology and therefore do not hold a "valid and current credential as a speech and language pathologist." I disagree.

The Licensure Act provides that in order to obtain a license as a speech and language pathologist from the Board, the applicant must

have a "master's degree in speech and language pathology." N.C.G.S. § 90-295(1) (1993). A person may teach speech-language impaired students in the public schools, however, if they hold a "valid and current credential" issued by the Department of Public Instruction (Department), N.C.G.S. § 90-294(c)(4), an agency of the Department of Education (State Board). N.C.G.S. § 115C-21(b)(1) (1994). Whether the credential issued by the Department is "valid and current" is a matter to be determined by the Department or State Board and is not governed by the Licensure Act. N.C.G.S. § 115C-315(d) (1994) (State Board "shall have entire control of certifying all applicants for professional positions in all public elementary and high schools of North Carolina; and it shall prescribe the rules and regulations for the renewal and extension of all certificates"); *see* 16 NCAC § 6C .0301 (April 1995) (State Board authorized to make rules for certification of "[a]ny person who desires to obtain employment from a [local educational agency] in a professional position").

In this case, the evidence presented by the defendants and not contested by the plaintiff, reveals that policies promulgated by the State Board and the Department permit a person holding a bachelor's degree in speech and language pathology to be provisionally licensed as a teacher of speech-language impaired students on the condition that the person pursue a master's degree, complete six semester credit hours each year, and complete a master's degree from an approved education program within five years of first being issued the provisional license. *See* 16 NCAC § 6C .0305(c) (Nov. 1994). A license issued consistent with these policies is a "valid and current credential."