N.C. Acupuncture Licensing Bd. v. N.C. Bd. of Physical Therapy Exam'rs,
2016 NCBC 31.

STATE OF NORTH CAROLINA

WAKE COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
15 CVS 12012

NORTH CAROLINA ACUPUNCTURE
LICENSING BOARD,

        Plaintiff,

v.

NORTH CAROLINA BOARD OF
PHYSICAL THERAPY EXAMINERS,
ELIZABETH HENRY, AART
SCHULENKLOPPER, CORNERSTONE
PHYSICAL THERAPY, INC., and
JESSAN HAGER,

        Defendants.

ORDER AND OPINION ON
DEFENDANTS' MOTIONS TO DISMISS

{1}    **THIS MATTER** is before the Court upon (i) Defendant North Carolina Board of Physical Therapy Examiners' ("Physical Therapy Board" or "PT Board") Motion to Dismiss Amended Complaint and (ii) Defendants Elizabeth Henry, Aart Schulenklopper, Cornerstone Physical Therapy, Inc., and Jessan Hager's (collectively, the "Private Defendants") Motion to Dismiss (collectively, the "Motions") in the above-captioned case.

{2}    The Court, having considered the Motions, briefs in support of and in opposition to the Motions, appropriate matters of record, and the arguments of counsel at a March 16, 2016 hearing on the Motions, hereby **GRANTS** the Motions.

> *Everett Gaskins Hancock, LLP, by E.D. Gaskins, Jr. and James M. Hash, and Stevens Martin Vaughn & Tadych, PLLC, by Michael J. Tadych, for Plaintiff North Carolina Acupuncture Licensing Board.*
>
> *Ellis & Winters LLP, by Matthew W. Sawchak, Troy D. Shelton, and Stephen Daniel Feldman, for Defendant North Carolina Board of Physical Therapy Examiners.*
>
> *Poyner Spruill LLP, by Andrew H. Erteschik, Caroline P. Mackie, and John Michael Durnovich, for Defendants Elizabeth Henry, Aart Schulenklopper, Cornerstone Physical Therapy, Inc., and Jessan Hager.*

Bledsoe, Judge.

# I.

## FACTUAL AND PROCEDURAL BACKGROUND

A.  Factual Background

{3}  Through this action, Plaintiff North Carolina Acupuncture Licensing Board ("Plaintiff" or "Acupuncture Board") seeks a declaration from the Court that the practice known as "dry needling" is a form of acupuncture, over which it has exclusive licensing powers.  The Acupuncture Board further asks the Court to enjoin the Physical Therapy Board and the Private Defendants from regulating and practicing dry needling, respectively.

{4}  The Acupuncture Board is a board created by statute.  N.C. Gen. Stat. § 90-453.  The Acupuncture Board is charged with implementing Chapter 90, Article 30 of the North Carolina General Statutes (the "Acupuncture Practice Act"), whose purpose is to "promote the health, safety, and welfare of the people of North Carolina" by regulating the licensing requirements for the practice of acupuncture.  *See* N.C. Gen. Stat. § 90-450 *et seq*.

{5}  The Physical Therapy Board is also a board created by statute.  N.C. Gen. Stat. § 90-270.25.  The Physical Therapy Practice Act, N.C. Gen. Stat. § 90-270.24 *et seq.*, charges the Physical Therapy Board with "safeguard[ing] the public health, safety and welfare against unqualified or incompetent practitioners of physical therapy . . . ."  N.C. Gen. Stat. § 90-270.26.  The Private Defendants are one physical therapy practice and three individual physical therapists who perform dry needling.  (Am. Compl. ¶¶ 8–11.)

{6}  "Dry needling," also known as "trigger point needling," is the practice of inserting needles into specific trigger points in the body to relieve muscle pain.  (Am. Compl. ¶¶ 19–20.)  As defined by statute, the practice of acupuncture involves the "insertion of acupuncture needles . . . based upon acupuncture diagnosis as a primary mode of therapy."  N.C. Gen. Stat. § 90-451(3).  Acupuncture is defined in turn as "a form of health care developed from traditional and modern Chinese medical concepts that employ acupuncture diagnosis and treatment . . ."  N.C. Gen.

Stat. § 90-451(1). The Acupuncture Board takes the position that dry needling is the practice of acupuncture because the needles used are no different from acupuncture needles, and the "trigger points" into which needles are inserted during dry needling are identical to the traditional "ashi points" utilized by acupuncturists for over 2,000 years. (Am. Compl. ¶¶ 20–21.) The practice of acupuncture is limited by our statutes to those who are licensed by the Acupuncture Board, supervised student practitioners, licensed physicians, and licensed chiropractors. N.C. Gen. Stat. § 90-452.

{7} The General Assembly has defined the scope of practice for physical therapists broadly. Physical therapy is "the evaluation or treatment of any person by the use of physical, chemical, or other properties of heat, light, water, electricity, sound, massage, or therapeutic exercise, or other rehabilitative procedures, with or without assistive devices, for the purposes of preventing, correcting, or alleviating a physical or mental disability." N.C. Gen. Stat. § 90-270.24(4). The practice of physical therapy is not limited to a specific set of procedures, as "[e]valuation and treatment of patients may involve physical measures, methods, or procedures as are found commensurate with physical therapy education and training and generally or specifically authorized by regulations of the Board." *Id.* The Physical Therapy Board believes that dry needling falls within this statutory definition.

{8} In 2002, the Physical Therapy Board, as reflected in its newsletter for licensees, took the position that dry needling was a form of acupuncture and outside the scope of practice of physical therapists. (Am. Compl. ¶ 35, Ex. C.) Eight years later, the Physical Therapy Board revised its view and, in a September 2010 position statement, concluded that dry needling is within the scope of practice of physical therapists.[1] (PT Board's Mot. Dismiss Ex. C ¶ 6).

{9} In response to this change in position, the Acupuncture Board requested a formal Attorney General Opinion on April 15, 2011. (PT Board's Mot. Dismiss Ex.

---

[1] Although not relevant to the Court's decision, the Physical Therapy Board has presented evidence that a majority of states specifically allow physical therapists to practice dry needling. (PT Board's Br. Supp. Mot. Dismiss Ex. A. 406–08.)

D.)  The question posed by the Acupuncture Board was whether a person licensed to practice physical therapy but not acupuncture could perform dry needling.  (PT Board's Mot. Dismiss Ex. D.)

{10}  The Attorney General's Advisory Letter followed in December 2011, and it concluded that the Physical Therapy Board had the power to determine whether dry needling is within the scope of practice of physical therapists.  (PT Board's Mot. Dismiss Ex. B, hereinafter "Att'y Gen. Advisory Letter," 3.)  The Advisory Letter took the position that dry needling is distinct from acupuncture and that the statutory definition of physical therapy neither specifically allows nor prohibits the puncturing of the body with needles.  (Att'y Gen. Advisory Letter 2.)  Finally, the Advisory Letter counseled that, in order to uphold its statutory mandate to safeguard the public health, the Physical Therapy Board would need to adopt administrative rules and standards to ensure that dry needling was only practiced by physical therapists with a requisite level of skill and competence.  (Att'y Gen. Advisory Letter 3.)

{11}  Under the rulemaking procedures set forth in the Administrative Procedure Act, the Physical Therapy Board in 2014 proposed a rule setting training standards for dry needling.  (Am. Compl. Ex. D.)  The proposed rule would have required at least fifty-four hours of additional training for physical therapists who wished to perform dry needling.  (Am. Compl. Ex. D.)  Pursuant to N.C. Gen. Stat. § 150B-21.8, the Physical Therapy Board submitted the proposed rule to the Rules Review Commission, which came on for hearing on January 15, 2015, at which the Acupuncture Board appeared alongside others to object to the proposed rule.  (Am. Compl. ¶¶ 45–46.)  The Rules Review Commission objected to the proposed rule, citing insufficient statutory authority for the proposed rule, as required by N.C. Gen. Stat. § 21.9(a).  (Am. Compl. Ex. E.)

{12}  After the Rules Review Commission objected to the proposed rule, the Physical Therapy Board posted on its website a revised position statement about dry needling on January 16, 2015.  (Am. Compl. Ex. G.)  The revised position statement reflects the Physical Therapy Board's belief that, under the Attorney

General's Advisory Letter, dry needling still falls within the scope of physical therapy. (Am. Compl. Ex. F.) The Physical Therapy Board "believes physical therapists can continue to perform dry needling so long as they possess the requisite education and training required by N.C.G.S. § 90-270.24(4), but there are no regulations to set the specific requirements for engaging in dry needling." (Am. Compl. Ex. F.)

{13} The Acupuncture Board seeks a declaratory judgment that the performance of dry needling by physical therapists constitutes the unlawful practice of acupuncture. (Am. Compl. ¶ 62.) The Acupuncture Board additionally seeks a permanent injunction requiring the Physical Therapy Board to withdraw the January 16 revised position statement and other similar notices. (Am. Compl. ¶ 68.)

{14} The sole claim against the Private Defendants is for a permanent injunction pursuant to N.C. Gen. Stat. § 90-454(4), which empowers the Acupuncture Board to sue to enjoin the unauthorized practice of acupuncture. (Am. Compl. ¶¶ 69–73.) The Acupuncture Board alleges that the Private Defendants have practiced acupuncture without a license by performing dry needling. (Am. Compl. ¶¶ 70–71.) In the case of Cornerstone, the Acupuncture Board alleges that it unlawfully provides acupuncture services through its physical therapists who perform dry needling. (Am. Compl. ¶ 71.)

B. Procedural Background

{15} The Acupuncture Board initiated this action in September 2015 by filing a complaint seeking a declaratory judgment and permanent injunction against the Physical Therapy Board. The Physical Therapy Board filed a motion to dismiss, which the parties fully briefed. Two days before a hearing on the motion to dismiss, the Acupuncture Board filed as of right the Amended Complaint, which added claims for a permanent injunction against the Private Defendants.

{16} Prior to the filing of the Amended Complaint, Dr. Henry and Dr. Schulenklopper, two of the Private Defendants, were already engaged in litigation against the Acupuncture Board. Dr. Henry and Dr. Schulenklopper, along with

others, filed a federal antitrust lawsuit against the Acupuncture Board on October 7, 2015, alleging that the Acupuncture Board has violated the Sherman Act by conspiring to exclude physical therapists as competitors. (Private Defs.' Mot. Dismiss Ex. A.)

{17} The Physical Therapy Board and the Private Defendants filed separate Motions to Dismiss the Amended Complaint on January 28, 2016. The Court held a hearing on the Motions on March 16, 2016, at which all parties were represented by counsel, and the Motions are now ripe for decision.[2]

## II.

## LEGAL STANDARD

{18} The Motions to Dismiss seek relief under North Carolina Rules of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6).

{19} A motion to dismiss for failure to exhaust administrative remedies is appropriately brought as a Rule 12(b)(1) challenge to subject matter jurisdiction. *Shell Island Homeowners Ass'n v. Tomlinson*, 134 N.C. App. 217, 220, 517 S.E.2d 406, 410 (1999). As the party invoking jurisdiction, the Acupuncture Board bears the burden of establishing standing. *Am. Woodland Indus. v. Tolson*, 155 N.C. App. 264, 267, 574 S.E.2d 55, 57 (2002). In determining the existence of subject matter jurisdiction, the Court may consider matters outside the pleadings. *Emory v. Jackson Chapel First Missionary Baptist Church*, 165 N.C. App. 489, 491, 598 S.E.2d 667, 670 (2004).

---

[2] Plaintiff also filed a Motion for Preliminary Injunction on March 11, 2016, which is scheduled for hearing on May 5, 2016, as well as a Motion to Modify Discovery Stay on April 12, 2016 and a Motion for Leave to File Supplemental Documents in support of the Motions for Preliminary Injunction and to Modify Discovery Stay on April 20, 2016 (collectively, "Plaintiff's Motions"). The Court's ruling on Defendants' Motions to Dismiss dismissing Plaintiff's claims renders each of Plaintiff's Motions moot, and, thus, they are denied. *See, e.g.*, *Jacobson v. AMTRAK*, No. 1:11CV969, 2013 U.S. Dist. LEXIS 8190, at *5 (M.D.N.C. Jan. 22, 2013) (noting that "a dismissal will render moot all other pending motions"); *US Airline Pilots Ass'n v. AWAPPA, LLC*, No. 3:08cv246, 2008 U.S. Dist. LEXIS 106440, at *50 (W.D.N.C. July 11, 2008) (holding that "Plaintiff's requests for a temporary restraining order and a preliminary injunction are rendered moot by the dismissal of the Plaintiff's state-law claims, and for that reason are denied.").

{20}    A sovereign immunity defense may be raised by a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction. *Parker v. Town of Erwin*, 776 S.E.2d 710, 720 (N.C. Ct. App. Sept. 15, 2015).[3]  The standard of review in deciding a 12(b)(2) motion depends upon the procedural posture of the matter, and the parties are permitted to submit evidence and affidavits in support of their jurisdictional arguments. *Id.*    Where, as here, the defendant submits affidavits or other supporting evidence with its 12(b)(2) motion, the allegations in the complaint can no longer be taken as true and the plaintiff cannot rest on the complaint's allegations. *Id.* at 721 (quoting *Banc of Am. Sec. LLC v. Evergreen Int'l Aviation, Inc.*, 169 N.C. App. 690, 693, 611 S.E.2d 179, 182 (2005)).

{21}    A Rule 12(b)(6) motion to dismiss for failure to state a claim "does not present the merits, but only whether the merits may be reached." *Concrete Serv. Corp. v. Investors Grp., Inc.*, 79 N.C. App. 678, 681, 340 S.E.2d 755, 758 (1986).  The standard of review on a 12(b)(6) motion is whether the allegations of the complaint, taken as true, are sufficient to state claim upon which relief may be granted. *Laster v. Francis*, 199 N.C. App. 572, 577, 681 S.E.2d 858, 862 (2009).

III.

ANALYSIS

A.  Sovereign Immunity

{22}    "[I]t is an established principle of jurisprudence that a state may not be sued unless by statute it has consented to be sued or has otherwise waived its immunity from suit." *Ray v. N.C. DOT*, 366 N.C. 1, 4, 727 S.E.2d 675, 678 (2012) (internal punctuation omitted) (quoting *Smith v. Hefner*, 235 N.C. 1, 6, 68 S.E.2d

---

[3] The precise nature of a sovereign immunity defense is somewhat unsettled.  Court of Appeals case law has consistently held that a sovereign immunity defense presents an issue of personal, not subject matter, jurisdiction. *Can Am South, LLC v. State*, 234 N.C. App. 119, 123–24, 759 S.E.2d 304, 308 (2014).  At the same time, however, the Supreme Court has explicitly stated that it has not yet determined "whether sovereign immunity is a question of subject matter jurisdiction." *Teachy v. Coble Dairies, Inc.*, 306 N.C. 324, 327–28, 293 S.E.2d 182, 184 (1982).  The Supreme Court has not commented further on the distinction, and Court of Appeals cases still cite *Teachy* favorably. *Can Am South*, 234 N.C. App. at 123–24, 759 S.E.2d at 308.  The distinction can be important because a denial of a 12(b)(2) motion regarding personal jurisdiction is immediately appealable while the denial of a 12(b)(1) motion regarding subject matter jurisdiction is not immediately appealable. *Id.* This lingering question does not impact the current Motions, however, because the Physical Therapy Board has asserted its sovereign immunity defense only under Rule 12(b)(2).

783, 787 (1952)). This protection extends to state agencies, unless it has been waived. *Id.* Waiver of sovereign immunity arises by statute, and such statutes are strictly construed. *State v. Taylor*, 322 N.C. 433, 436–37, 368 S.E.2d 601, 603 (1988) (citation omitted). In order to overcome a sovereign immunity defense, a complaint must allege facts "to provide a reasonable forecast of waiver" of sovereign immunity by the State. *Fabrikant v. Currituck Cnty.*, 174 N.C. App. 30, 38, 621 S.E.2d 19, 25 (2005).

{23} The Amended Complaint does not allege that the Physical Therapy Board has waived sovereign immunity, and the Acupuncture Board admits that sovereign immunity generally applies to both the Physical Therapy Board and the Acupuncture Board (Pl.'s Br. Opp. PT Board's Mot. Dismiss 4.) Rather, the Acupuncture Board argues that a sovereign immunity defense is categorically unavailable in government on government litigation such as that here. (Pl.'s Br. Opp. PT Board's Mot. Dismiss 5.)

{24} In support of this view, the Acupuncture Board directs the Court's attention to several cases of government on government litigation where the Court either considered the merits of the case or dismissed without raising the issue of sovereign immunity. *See, e.g., N.C. Dep't of Corr. v. N.C. Med. Bd.*, 363 N.C. 189, 675 S.E.2d 641 (2009) (affirming declaratory judgment action between two state agencies); *N.C. Bd. Of Exam'rs for Speech & Language Pathologists & Audiologists v. N.C. State Bd. Of Educ.*, 122 N.C. App. 15, 16, 468 S.E.2d 826, 827 (1996) (reversing summary judgment and remanding for further proceedings in declaratory judgment action between state agencies); *State ex rel. Edmisten v. Tucker*, 312 N.C. 326, 329–30, 323 S.E.2d 294, 298 (1984) (affirming dismissal of Attorney General's declaratory judgment action against district court judges for lack of justiciability).

{25} The Court initially notes that the mere existence of such cases is not dispositive, because a defense that the court lacks personal jurisdiction is waived if not timely raised. N.C. R. Civ. P. 12(h)(1). None of the cases identified by the Acupuncture Board mention sovereign immunity, and the Court therefore hesitates

to infer from their silence that sovereign immunity is not an available defense in these types of suits. *See, e.g.*, *Pearson v. C.P. Buckner Steel Erection*, 139 N.C. App. 394, 399, 533 S.E.2d 532, 535 (2000) (declining to assume the Supreme Court had decided an issue it had not specifically addressed); *see also Cooper Indus. V. Aviall Servs.*, 543 U.S. 157, 170 (2004) ("Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents.") (quotations and citations omitted).

{26} The Court considers it more significant that our Supreme Court has entertained the question of sovereign immunity when appropriately raised in government on government litigation. *N.C. Ins. Guar. Ass'n v. Bd. of Trs. of Guilford Tech. Cmty. Coll.*, 364 N.C. 102, 103–04, 691 S.E.2d 694, 695–96 (2010). In that case, the plaintiff, a legal entity created and governed by statute, brought suit against the defendant seeking reimbursement for certain payments on worker's compensation claims. *Id.* Defendant's sovereign immunity defense was the sole issue on appeal to the Supreme Court, and the Court ultimately found a statutory waiver of sovereign immunity on that claim. *Id.* at 112, 691 S.E.2d 700. The finding of a statutory waiver necessarily rests on an unarticulated assumption that sovereign immunity was otherwise available as a defense, a sentiment born out even in the dissenting opinion. *Id.* at 114, 691 S.E.2d 701 (Edmunds, J., dissenting) ("The majority correctly notes that this Court historically has been reluctant to find exceptions to the long-standing doctrine of sovereign immunity when the General Assembly has not explicitly set out a waiver.").

{27} The availability of a sovereign immunity defense in government on government litigation has been expressly considered by the federal court widely recognized as an authority on matters of administrative law. *See Dep't of the Army v. Fed. Labor Relations Auth.*, 56 F.3d 273 (D.C. Cir. 1995). The petitioner in that case explicitly argued that sovereign immunity did not apply because the government was on both sides of the case and the doctrine of sovereign immunity was designed to protect the government only from litigation initiated by an outside

source. *Id.* at 275–76. The D.C. Circuit categorized the petitioner's theory as "an unduly circumscribed notion of the doctrine of sovereign immunity," which "stands as an obstacle to virtually all direct assaults against the public fisc, save only those incursions from time to time authorized by Congress." *Id.* (quoting *United States v. Horn*, 29 F.3d 754, 761 (1st Cir. 1994) and citing *Gray v. Bell*, 712 F.2d 490, 511 (D.C. Cir. 1983), in which the court observed that sovereign immunity rests on "the general rational that courts should not 'interfere' with government operations and policymaking")).[4] *See also, e.g.*, *Ark. State Highway Comm'n v. Ark. River Co.*, 271 F.3d 753, 762 (8th Cir. 2001) (citing *Army* and holding state agency's claim against federal government barred by sovereign immunity); 14 Charles A. Wright et al., *Federal Practice and Procedure* § 3654, at 129 n.15 (4th ed. 2015) (citing *Army* and stating "sovereign immunity bars suits against the United States that are commenced by government entities.").

{28} The Court is persuaded that the D.C. Circuit's approach to government on government litigation,[5] particularly when considered alongside *North Carolina Insurance Guaranty Ass'n*, reflects the North Carolina Supreme Court's view of sovereign immunity as an "absolute and unqualified" doctrine unless and until the State expressly consents to being sued. *Guthrie v. N.C. State Ports Auth.*, 307 N.C. 522, 534, 299 S.E.2d 618, 625 (1983) ("[T]he sovereign will not be subject to any

---

[4] The D.C. Circuit persuasively explained in *Gray*:

> The modern policy basis justifying sovereign immunity from suit has three principal themes. First, and most important, under traditional principles of separation of powers, courts should refrain from reviewing or judging the propriety of the policymaking acts of coordinate branches. Second, consistent with the related doctrine of official immunity, courts should not subject the sovereign to liability where doing so would inhibit vigorous decision-making by government policymakers. Third, in the interest of preserving public revenues and property, courts should be wary of creating huge and unpredictable governmental liabilities by exposing the sovereign to damage claims for broad policy decisions that necessarily impact large numbers of people.

712 F.2d at 511.

[5] The North Carolina Supreme Court has previously relied upon federal decisions in deciding issues of North Carolina sovereign immunity law. *See, e.g.*, *Craig v. New Hanover Cnty. Bd. of Educ.*, 363 N.C. 334, 337, 678 S.E.2d 351, 354 (2009) (quoting with approval *Mitchell v. Forsyth*, 472 U.S. 511, 525 (1985)).

form of judicial action without its express consent."). The Court therefore rejects the Acupuncture Board's argument that sovereign immunity can never apply in government on government litigation.[6] Because the Acupuncture Board did not otherwise challenge the Physical Therapy Board's Motion to Dismiss for lack of personal jurisdiction, the Court concludes that it lacks personal jurisdiction over the Physical Therapy Board and grants the Physical Therapy Board's Motion to Dismiss under Rule 12(b)(2).

B. Failure to Exhaust Administrative Remedies

{29} The General Assembly has waived sovereign immunity through the North Carolina Administrative Procedure Act, N.C. Gen. Stat. § 150B-1 *et seq.*, several provisions of which entitle a plaintiff to judicial review against a state agency. "Where the legislature has provided by statute an effective administrative remedy, that remedy is exclusive and its relief must be exhausted before recourse may be had to the courts." *Shell Island*, 134 N.C. App. at 220–21, 517 S.E.2d at 410. The Acupuncture Board has alleged that "no adequate administrative remedies exist . . . and to the extent that any such remedies may have existed, they have now been exhausted." (Am. Compl. ¶ 60.) As discussed above, failure to exhaust administrative remedies is a question of standing, and conclusory allegations are insufficient to show that the plaintiff has standing. *See Universal Cab Co. v. City of Charlotte*, 2015 NCBC LEXIS 23, at *20–21 (N.C. Super. Ct. Mar. 5, 2015) (collecting cases).

{30} The requirement that a plaintiff exhaust its administrative remedies is not insignificant, as it respects the separation of powers, better preserves the record for judicial review, and makes complex litigation more manageable:

---

[6] The Acupuncture Board also relies on *Charlotte-Mecklenburg Hosp. Auth. v. N.C. Indus. Comm'n*, 336 N.C. 200, 443 S.E.2d 716 (1994), as establishing a waiver of sovereign immunity where state actors have, as Plaintiff argues here, "invade[d] or threaten[ed] to invade the personal or property rights of a citizen *in disregard of the law*." 336 N.C. at 208, 443 S.E.2d at 721 (emphasis in original). Central to the Supreme Court's decision, however, was the lack of administrative remedies available to the plaintiff under the Administrative Procedure Act in the unusual circumstances of that case. *See id.* at 208–09, 443 S.E.2d at 721–22. Because, for reasons explained in the next section, the Court concludes that the Acupuncture Board had administrative remedies available to it to challenge the Physical Therapy Board's action, the Court does not find *Charlotte-Mecklenburg Hosp. Auth.* controlling or persuasive in assessing Defendants' Motions.

[Where an adequate administrative remedy exists], the legislature has expressed an intention to give the administrative entity most concerned with a particular matter the first chance to discover and rectify error. Only after the appropriate agency has developed its own record and factual background upon which its decision must rest should the courts be available to review the sufficiency of its process. An earlier intercession may be both wasteful and unwarranted. To permit the interruption and cessation of proceedings before a commission by untimely and premature intervention by the courts would completely destroy the efficiency, effectiveness, and purpose of the administrative agencies.

*Presnell v. Pell*, 298 N.C. 715, 722, 260 S.E.2d 611, 615 (1979). The Physical Therapy Board argues that the Acupuncture Board has not exhausted its remedies under the Administrative Procedure Act because it has not sought from the Physical Therapy Board a declaratory ruling pursuant to section 150B-4 or filed a rulemaking petition pursuant to section 150B-20. (PT Board's Br. Supp. Mot. Dismiss 12.)

{31} The Administrative Procedure Act allows a party to seek a declaratory ruling from a state agency:

On request of a person aggrieved, an agency shall issue a declaratory ruling as to the validity of a rule or as to the applicability to a given state of facts of a statute administered by the agency or of a rule or order of the agency. Upon request, an agency shall also issue a declaratory ruling to resolve a conflict or inconsistency within the agency regarding an interpretation of the law or a rule adopted by the agency.

N.C. Gen. Stat. § 150B-4(a). A declaratory ruling is binding on the agency and the requester, and the agency's ruling or its decision not to issue a ruling is immediately subject to judicial review. N.C. Gen. Stat. § 150B-4(a), (a1). When a plaintiff, alleging that an agency's action exceeds its authority, sues without first seeking a section 150B-4 declaratory ruling, the Court may dismiss for failure to exhaust administrative remedies. *Affordable Care v. N.C. State Bd. of Dental Exam'rs*, 153 N.C. App. 527, 534, 571 S.E.2d 52, 58 (2002) (holding that plaintiffs had not exhausted administrative remedies where they failed to seek relief from the state agency under sections 150B-4 and 150B-20 and only alleged that they objected

to a proposed rule before the Rules Review Commission); *Porter v. N.C. Dep't of Ins.*, 40 N.C. 376, 379–80, 253 S.E.2d 44, 46 (1979) (dismissing declaratory judgment action where plaintiff failed to first seek declaratory ruling from the state agency under the Administrative Procedure Act).

{32} The Acupuncture Board argues that it could not have sought a declaratory ruling under section 150B-4 because it is not a "person aggrieved," which the Administrative Procedure Act defines as "any person or group of persons of common interest directly or indirectly affected substantially in his or its person, property, or employment by an administrative decision." N.C. Gen. Stat. § 150B-2(6). The Acupuncture Board specifically contends that it has not been aggrieved by an "administrative decision" under section 150B-2(6) because the only final agency action in this case has been the Rule Review Commission's objection to the proposed rule, with which the Acupuncture Board agrees. (Pl.'s Br. Opp. PT Board's Mot. Dismiss 8.)

{33} The Acupuncture Board, however, has not identified any authority holding that a declaratory ruling under section 150B-4 may only be sought for final agency action.[7] In fact, while the first sentence of section 150B-4 requires a "person aggrieved," and speaks of the "validity of a rule," the second sentence is written more broadly: "Upon request, an agency shall also issue a declaratory ruling to resolve a conflict or inconsistency within the agency regarding an interpretation of the law or a rule adopted by the agency." N.C. Gen. Stat. § 150B-4(a). On its plain language, that sentence clearly applies to the relief sought by the Acupuncture Board here, whose Amended Complaint asks the Court to resolve a conflict or inconsistency regarding an interpretation of the law surrounding dry needling and the scope of physical therapy practice. Furthermore, status as a "person aggrieved"

---

[7] To the contrary, under other administrative statutes, our courts have required plaintiffs to exhaust their administrative remedies when the challenged actions did not involve final agency action. *See, e.g.*, *LegalZoom.com, Inc. v. N.C. State Bar*, 2014 NCBC LEXIS 9, at *18–24 (N.C. Super Ct. Mar. 24, 2014) (requiring exhaustion of administrative remedies when plaintiff challenged state actor's inaction); *Abrons Family Practice & Urgent Care, PA v. N.C. Dep't of HHS*, 2015 NCBC LEXIS 63, at *26–27 (N.C. Super. Ct. June 12, 2015) (requiring exhaustion of administrative remedies when plaintiff challenged state agency's Medicaid reimbursement process).

is essentially a question of standing. *See N.C. Forestry Ass'n v. Dep't of Env't & Natural Res.*, 357 N.C. 640, 643, 588 S.E.2d 880, 882 (2003). To the extent that the Acupuncture Board asserts that it has standing to seek the requested relief in this state court lawsuit, it would be illogical to conclude that the Acupuncture Board is not also a "person aggrieved."

{34} The Court likewise considers meritless the Acupuncture Board's argument that it could not have sought a section 150B-4 declaratory ruling because the Physical Therapy Board has acted through informal rulemaking "and thus no statute administered by the PT Board is involved." (Pl.'s Br. Opp. PT Board's Mot. Dismiss 9.) That argument is inconsistent with the allegations in the Amended Complaint. The Acupuncture Board "seeks a declaration from the Court that . . . physical therapists engaged in 'dry needling' constitutes the unlawful practice of acupuncture' pursuant to the [Acupuncture Practice Act]." (Am. Compl. ¶ 62.) Issuing a declaratory judgment on that question would necessarily require the Court to construe the Physical Therapy Practice Act. Because the Acupuncture Board has not sought a declaratory ruling under section 150B-4, the Physical Therapy Board has not had the opportunity to develop its own record and reasoning on which its decision rests prior to judicial review.

{35} The Physical Therapy Board additionally argues that the Acupuncture Board has not exhausted its administrative remedies because it has failed to file a petition for rulemaking. "A person may petition an agency to adopt a rule by submitting to the agency a written rule-making petition requesting the adoption." N.C. Gen. Stat. § 150B-20(a). If an agency denies a rule-making petition, it must send the petitioner a written statement explaining its denial, and the petitioner is then entitled to judicial review. N.C. Gen. Stat. § 150B-20(c), (d).

{36} The Acupuncture Board believes this remedy is inapplicable because the Rules Review Commission already objected to the Physical Therapy Board's proposed rule on dry needling. (Pl.'s Br. Opp. PT Board's Mot. Dismiss 9.) However, our Court of Appeals has previously held that a prior hearing and decision by the Rules Review Commission is not sufficient to show exhaustion of

administrative remedies, even if the plaintiff anticipates no different result. *Affordable Care*, 153 N.C. App. at 534, 571 S.E.2d at 58.

{37} Therefore, because the Acupuncture Board has brought this suit without seeking relief from the Physical Therapy Board under section 150B-4 and 150B-20, which are adequate remedies available to it, the Acupuncture Board has not exhausted its administrative remedies under the Administrative Procedure Act. The Court therefore concludes that it lacks subject matter jurisdiction over this action and grants the Physical Therapy Board's Motion to Dismiss under Rule 12(b)(1).

C. Anti-Collateral Attack Rule

{38} The Physical Therapy Board and the Private Defendants both argue that all claims should be dismissed against the Private Defendants as an improper collateral attack against the exhaustion of administrative remedies doctrine. *See Vanwijk v. Prof'l Nursing Servs.*, 213 N.C. App. 407, 409–410, 713 S.E.2d 766, 768 (2011). In *Vanwijk*, the issue on appeal was whether the trial court properly dismissed plaintiff's complaint as to private defendants on the grounds of failure to exhaust administrative remedies. *Id.* Following the plaintiff-police officer's termination after failing a drug test, rather than challenging the test results before the Office of Administrative Hearings, plaintiff filed suit against the drug-test provider, alleging that it had negligently administered the test. *Id.* at 407–09, 713 S.E.2d at 767–68. The Court of Appeals affirmed the dismissal, stating that "[p]laintiff would like for this Court to believe that the administrative exhaustion doctrine only applies to claims brought against administrative agencies and not to those brought against private parties that happen to stem from decisions of an administrative agency," *id.* at 410, 713 S.E.2d at 768, an outcome the Court specifically rejected. Similarly, in *Prentiss v. Allstate Insurance Company*, the Court of Appeals dismissed the plaintiff's complaint against his private insurer on the grounds that the substance of the complaint was an attack on the rates system established by the insurance commissioner, and therefore that "this case involve[ed]

an agency decision which is subject to the APA." 144 N.C. App. 404, 408, 548 S.E.2d 557, 560 (2001).

{39} This prohibition on sidestepping the exhaustion of administrative remedies doctrine does not change when a plaintiff brings in a state agency as a defendant. In a case nearly identical to *Prentiss*, the plaintiff sought to challenge the insurance rates system by naming private insurance companies and the Department of Insurance as co-defendants. *Burrill v. Long*, No. COA06-955, 2007 N.C. App. LEXIS 1709 (N.C. Ct. App. Aug. 7, 2007) (unpublished). The Court held that the trial court lacked subject matter jurisdiction as to all claims because the plaintiff had not exhausted his remedies under the APA. *Id.* at *5–6.

{40} The rationale for prohibiting a plaintiff from collaterally attacking an agency decision by bringing an action against private defendants is that "adding another layer of collateral review for agency decisions threatens to put at naught the administrative process established by [the legislature]." *Palumbo v. Waste Technologies Indus.*, 989 F.2d 156, 161 (4th Cir. 1993) (applying similar federal law). Indeed, allowing such claims to proceed would deprive the Court of the evidentiary record that would otherwise be accumulated through agency proceedings. *Id.*

{41} Here, the Acupuncture Board added the Private Defendants shortly before a hearing on the first motions to dismiss. The relief sought against the Private Defendants would achieve the same results sought by the Acupuncture Board against the Physical Therapy Board. While the Acupuncture Board has the power to sue to enjoin the unauthorized practice of acupuncture under N.C. Gen. Stat. § 90-454(4), considering Plaintiff's claims would require the Court to determine whether dry needling falls within the statutory definition of acupuncture and therefore within the Acupuncture Board's exclusive sphere of regulation. Because the claim brought against the Private Defendants is in essence a challenge of agency action—the Physical Therapy Board's issuance of the revised position statement after its proposed rule was rejected—the Acupuncture Board is still required to exhaust its administrative remedies before seeking judicial review.

Therefore, for the same reasons as stated above, the Court concludes that it lacks subject matter jurisdiction over Plaintiff's claims against the Private Defendants.

IV.

CONCLUSION

{42} **WHEREFORE**, for the foregoing reasons, the Court hereby **GRANTS** the Physical Therapy Board's Motion to Dismiss on the basis of Rule 12(b)(1) and Rule 12(b)(2), **GRANTS** the Private Defendants' Motion to Dismiss on the basis of Rule 12(b)(1), and therefore **DISMISSES** the claims asserted in Plaintiff's Amended Complaint without prejudice.[8]

{43} Having concluded that the Court lacks both personal and subject matter jurisdiction over this action, the Court may not address Defendants' arguments under Rule 12(b)(6) that the requested relief would violate the antitrust provision of the North Carolina Constitution, N.C. Const. art. I, § 34. *See, e.g., In re T.R.P.*, 360 N.C. 588, 590, 636 S.E.2d 787, 790 (2006) ("Subject matter jurisdiction is the indispensable foundation upon which valid judicial decisions rest, and in its absence a court has no power to act[.]"); *In re Z.T.B.*, 170 N.C. App. 564, 572, 613 S.E.2d 298, 302 (2005) ("[L]ack of subject matter jurisdiction divests the trial court of any authority to adjudicate . . . .").

{44} In light of the Court's ruling on Defendants' Motions to Dismiss and the resulting denial of Plaintiff's Motions as moot as explained in footnote 2 *supra*, the Court hereby cancels the hearing on Plaintiff's Motion for Preliminary Injunction and Rule 17 Case Management Conference currently scheduled for May 5, 2016.

---

[8] A dismissal for lack of jurisdiction is generally a dismissal without prejudice. "Unless the court in its order for dismissal otherwise specifies, a dismissal under this section and any dismissal not provided for in this rule, *other than a dismissal for lack of jurisdiction* . . . operates as an adjudication upon the merits." N.C. R. Civ. P. 41(b) (emphasis added). Because dismissal for lack of jurisdiction does not allow a trial court to engage with the merits, the plaintiff is not barred from bringing the claim where jurisdiction exists. *Hudson Int'l, Inc. v. Hudson*, 145 N.C. App. 631, 638, 550 S.E.2d 571, 575 (2001) (citing *Falk Integrated Tech., Inc. v. Stack*, 132 N.C. App. 807, 810–11, 513 S.E.2d 572, 574 (1999). Nevertheless, the trial court retains broad discretion in determining whether to order dismissal with or without prejudice. *Johnson v. Bollinger*, 86 N.C. App. 1, 8–9, 356 S.E.2d 378, 383 (1987) (citing *Whedon v. Whedon*, 313 N.C. 200, 213, 328 S.E.2d 437, 445 (1985)).

**SO ORDERED**, this the 26th day of April, 2016.

/s/ Louis A. Bledsoe, III
Louis A. Bledsoe, III
Special Superior Court Judge
 for Complex Business Cases